RICHARD A. BROWN *v.* KATHLEEN W. BROWN
(12278)

PETERS, C. J., HEALEY, PARSKEY, SHEA and SANTANIELLO, Js.

Argued November 9, 1984—decision released January 29, 1985

*Alan A. Rosa,* for the appellant (plaintiff).

*Martin A. Rader, Jr.,* for the appellee (defendant).

ARTHUR H. HEALEY, J. This case concerns the application of the Uniform Child Custody Jurisdiction Act (UCCJA) which has been adopted by both Connecticut and Florida, the two states directly involved in this appeal.[1] The plaintiff husband instituted this Connecticut custody action against the defendant wife, a Florida resident, after her refusal to return their two minor children[2] to him in Connecticut after summer visitation with her. The defendant filed a motion to dismiss the action on the basis that Connecticut was an

---

[1] See General Statutes §§ 46b-90 through 46b-114 and Fla. Stat. Ann. (West 1983) §§ 61.1302 through 61.1348. The Uniform Child Custody Jurisdiction Act became effective in Connecticut on October 1, 1978; Public Acts 1978, No. 78-318; and in Florida on October 1, 1977. Fla. Stat. Ann. (West 1983) §§ 61.1302 through 61.1348.

[2] The parties' two minor children are Russell, born on February 23, 1969, and Keith, born on February 27, 1970. Both children were born in Florida and lived there until August, 1980.

inconvenient forum under General Statutes § 46b-97[3]

[3] General Statutes § 46b-97 provides: "INCONVENIENT FORUM. (a) A court which has jurisdiction under this chapter to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.

"(b) A finding of inconvenient forum may be made upon the court's own motion or upon motion of a party or a guardian ad litem or other representative of the child.

"(c) In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, including but not limited to: (1) Another state is or recently was the child's home state; (2) another state has a closer connection with the child and his family or with the child and one or more of the contestants; (3) substantial evidence concerning the child's present or future care, protection, training and personal relationships is more readily available in another state; (4) the parties have agreed on another forum which is no less appropriate; and (5) the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in section 46b-91.

"(d) Before determining whether to decline or retain jurisdiction the court may communicate with a court of another state and exchange information pertinent to the assumption of jurisdiction by either court with a view to assuring that jurisdiction will be exercised by the more appropriate court and that a forum will be available to the parties.

"(e) If the court finds that it is an inconvenient forum and that a court of another state is a more appropriate forum, it may dismiss the proceedings, or it may stay the proceedings upon condition that a custody proceeding be promptly commenced in another named state or upon any other conditions which may be just and proper, including the condition that a moving party stipulate his consent and submission to the jurisdiction of the other forum.

"(f) The court may decline to exercise its jurisdiction under this chapter if a custody determination is incidental to an action for dissolution of marriage, divorce or another proceeding while retaining jurisdiction over the dissolution of marriage, divorce or other proceedings.

"(g) If it appears to the court that it is clearly an inappropriate forum, it may require the party who commenced the proceedings to pay, in addition to the costs of the proceedings in this state, necessary travel and other expenses, including attorneys' fees, incurred by other parties or their witnesses. Payment is to be made to the clerk of the court for remittance to the proper party.

"(h) Upon dismissal or stay of proceedings under this section, the court shall inform the court found to be the more appropriate forum of this fact, or if the court which would have jurisdiction in the other state is not cer-

to determine the issue of custody.[4] The trial court granted the defendant's motion and this appeal followed.

The relevant background circumstances are the following: The marriage of the parties was dissolved in 1979 in Florida where the parties had resided since 1969. The dissolution judgment gave primary custody of the minor children to the plaintiff and rights of "liberal and reasonable rights of visitation" to the defendant.[5] It also provided that neither party "can remove the children from the State of Florida without an Order of [this] Court." Moreover, the judgment also provided that the court "retains jurisdiction . . . to enter such Orders as may be equitable, appropriate and just and to insure compliance with this Final Judgment." Thereafter, on May 5, 1980, the Florida court entered a modification order pursuant to a joint stipu-

tainly known, shall transmit the information to the court administrator or other appropriate official for forwarding to the appropriate court.

"(i) Any communication received from another state informing this state of a finding of inconvenient forum because a court of this state is the more appropriate forum shall be filed in the custody registry of the appropriate court. Upon assuming jurisdiction the court of this state shall inform the original court of this fact."

[4] The defendant's motion to dismiss recited the following:

"The defendant, Kathleen Brown, respectfully requests the court to declare itself an inconvenient forum for the determination of the issue of custody of the minor children for the following reasons:

"1. Florida has a closer connection with the children and their family or with the children and one or more of the contestants. Conn. Gen. Stat. Section 46b-97 (c) (2).

"2. Substantial evidence concerning the children's present or future care, protection, training and personal relationships is more readily available in Florida. Conn. Gen. Stat. Section 46b-97 (c) (3).

"3. Florida has been recently the children's home state. Conn. Gen. Stat. Section 46b-97 (c) (1).

"4. The exercise of jurisdiction by Connecticut would contravene the purposes of the Uniform Child Custody Act. Conn. Gen. Stat. Section 46b-97 (c) (5)."

[5] After the divorce, the defendant lived in Florida "right close by" the plaintiff, "[a]bout a mile" away.

lation of the parties which provided, inter alia, that the plaintiff "may remove the minor children from the state of Florida, to reside in any location within the continental United States" and that the defendant "will have custody of the children during the summer months . . . ."[6]

In August, 1980, the plaintiff and the children left Florida and went to Columbus, Indiana, where they resided for about three and one-half months. The children attended school there.[7] The plaintiff remarried on September 3, 1980, in Indiana. He then moved to Bethel, Connecticut, and stayed with his brother for four or five weeks until he could find a place for the children. The children enrolled in and attended school in Bethel. Thereafter, the plaintiff moved to North Carolina, where the children went to school and lived until early in September, 1981. The plaintiff then returned for two weeks to Columbus, Indiana, with the children who were "enrolled in school" there.[8] Sometime around October 1, 1981, the plaintiff returned with the children to West Redding, Connecticut, and the children went to school in Redding. After living in West Redding for "about two and a half months," he moved in January, 1982, to New Milford where the children attended school until June, 1982. At that time, the children went to Florida to live with their mother, the defendant, for the summer.

---

[6] The joint stipulation which was made into the court order defined "the summer months" as "the days during June, July, August, and September, that school is not in session in the area where the children of the [defendant] and the [plaintiff] are living."

[7] Prior to going to Indiana in August, 1980, the children had attended school and been given religious education at a church school in Florida.

[8] At the hearing in the trial court on the motion to dismiss, the plaintiff testified that he returned to Indiana because he "was trying to have my last marriage work."

A week or two before the commencement of school in September,[9] the defendant's attorney wrote to the plaintiff requesting a modification of custody. The plaintiff refused and requested that the defendant return the children to him. She refused to do so. On September 9, 1982, the defendant filed an action in Florida seeking a modification of the custody award in the dissolution judgment.[10] On September 15, 1982, the plaintiff filed this action in Connecticut seeking enforcement of the Florida judgment.[11] By order dated October 1, 1982, the Florida court granted the defendant's motion for temporary custody and designated her as the primary custodian of the minor children whose residence was ordered to "be that of the [defendant] until further order of this court." In entering these orders, which were expressly designated temporary, that court, referring to its final judgment of August 8, 1979, found that it "has never relinquished its jurisdiction over the subject matter or the parties herein, and that [it] has the power, jurisdiction and authority to continue to issue Orders in this cause." Additionally, the Florida court in its order indicated that it had been advised that the plaintiff had initiated proceedings in Connecticut to request that state to recognize the final judgment in the original Florida action. It also noted that it was further advised that the Connecticut proceedings had been initiated on September 15, 1982, whereas the defendant had filed her Florida petition for modifica-

---

[9] The plaintiff testified that he expected the children to return to Connecticut in September, 1982, and that he had enrolled them here in school.

[10] The Florida court, prior to acting on this motion on October 1, 1982, stated that it had been "advised" that the plaintiff "was in fact served a copy of this Motion and Notice of this Hearing along with all preliminary pleadings and documents initiating the action for modification of Final Judgment."

[11] The record before us is not at all clear that the plaintiff was in fact represented by counsel in Florida at this point of the proceedings.

tion of its final judgment on September 9, 1982, when the minor children were in her physical care, custody and control.

Thereafter, on November 15, 1982, after a full hearing in Florida where both parties were represented by counsel, that court issued its "Order Relinquishing Jurisdiction."[12] This order, inter alia, determined that Florida was an inconvenient forum for a custody determination because of the unavailability of witnesses, including the plaintiff, and that "jurisdiction . . . is relinquished by this Court to the Courts of the State of Connecticut . . . [and] that this Court will cooperate with the Courts of the State of Connecticut . . . including resuming jurisdiction of the cause should the Courts of the State of Connecticut express their willingness that this be done."

On April 25, 1983, a hearing was held in Connecticut on the defendant's motion to dismiss which was predicated on the ground that Connecticut was an inconvenient forum under General Statutes § 46b-97 for the determination of custody.[13] The trial court granted the motion, finding that Florida should assume jurisdiction, and the plaintiff has appealed.

---

[12] This order included specifically the following provisions: "ORDERED AND ADJUDGED that a determination of the allegations regarding the Respondent's [plaintiff's] employment and residence are more appropriately determined in the community where the Respondent resides and where the witnesses are available to prove or disprove the Respondent's capacity as a parent. It is

"FURTHER ORDERED AND ADJUDGED that jurisdiction in this matter is relinquished by this Court to the Courts of the State of Connecticut. It is

"FURTHER ORDERED AND ADJUDGED that this Court will cooperate with the Courts of the State of Connecticut in determining such issues in this matter as it can, including resuming jurisdiction of the cause should the Courts of the State of Connecticut express their willingness that this be done."

[13] At that hearing, both parties were represented by counsel. The plaintiff, who had been subpoenaed by the defendant, testified and certain documents offered by both parties were admitted into evidence.

The plaintiff claims on appeal that the trial court erred: (1) in dismissing his action, contrary to statutory and case law and the order of the Florida court, when the Florida court had previously made the determination that the issue of custody should best be determined in Connecticut; and (2) in refusing, contrary to statutory intent, to permit him to present evidence through the defendant as a witness in his own behalf. We find no error.

I

The plaintiff's first claim of error is essentially three-fold: By declining jurisdiction, the plaintiff argues, the Connecticut court acted in contravention of the "home state" concept under the UCCJA, the Florida court order that relinquished jurisdiction, and the federal Parental Kidnapping Prevention Act of 1980 (PKPA). We address these prongs of his claim in that order.

A

The plaintiff claims that the Connecticut court erred in dismissing this action on the ground that Florida at the time was the "home state," a "finding" the plaintiff characterizes as contrary to the statutory definition of "home state." See General Statutes §§ 46b-92 (5); 46b-93 (a) (1) (A), (B).[14] The plaintiff cannot, as appeared

---

[14] General Statutes § 46b-92 (5) provides: " 'Home state' means the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old, the state in which the child lived from birth with any of such persons. Periods of temporary absence of any of the named persons are counted as part of the six month or other period . . . ."

General Statutes § 46b-93, "Jurisdiction" provides in part: "(a) The superior court shall have jurisdiction to make a child custody determination by initial or modification decree if: (1) This state (A) is the home state of the child at the time of commencement of the proceeding, or (B) had been the child's home state within six months before the commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state . . . ."

at oral argument, establish that the "home state" concept was a basis for the Connecticut court's ruling from which he now appeals; the record does not support the plaintiff's contention that this question was actually decided. The issue on this appeal does not turn, however, on whether Florida or Connecticut is the "home state" under General Statutes § 46b-93 (a) (1) as the plaintiff seems to argue.[15] Rather, our focus is whether the trial court erred when it dismissed the plaintiff's action pursuant to the UCCJA's "inconvenient forum" provision, General Statutes § 46b-97, which was the explicit thrust of the defendant's motion to dismiss. In her motion to the Connecticut court, the defendant asserted four reasons for declining jurisdiction pursuant to § 46b-97. The court in its memorandum of decision on the motion to dismiss explicitly relied on at least two of those grounds, i.e., that Florida has a "closer connection" with the children than does Connecticut; see General Statutes § 46b-97 (c) (2); and that "substantial evidence" concerning the Brown children's present and future care "is more readily available" in Florida. See General Statutes § 46b-97 (c) (3). We agree with the result reached by the Connecticut court and first address the factors that should be weighed by the Connecticut court in determining under the UCCJA whether the Florida court rather than the Connecticut court should adjudicate this custody dispute.

---

[15] The issue of "home state," if it were crucial, would be a troublesome one. The record discloses that the minor children resided with the plaintiff in Connecticut from sometime around October, 1981, until they went to Florida in June, 1982, to live with the defendant for the summer. When this instant proceeding was instituted in September, 1982, it would appear that the children had not lived with the defendant in Florida for "at least six consecutive months" immediately preceding the time involved, i.e., the commencement of the Connecticut proceeding, so that Florida would be the "home state." See General Statutes §§ 46b-92 (5), 46b-93 (a) (1) (A), (B). We need not decide, however, that ground of the motion to dismiss which asserts that "Florida has been recently the children's home state. Conn. Gen. Stat. Section 46b-97 (c) (1)."

We note that the question here is not whether jurisdiction existed in Connecticut, but rather whether it should be declined pursuant to § 46b-97. These questions are separate and distinct under the UCCJA which envisages that where concurrent jurisdiction exists, only one state should *exercise* that jurisdiction. *Plas* v. *Superior Court,* 155 Cal. App. 3d 1008, 1018, 202 Cal. Rptr. 490 (1984); *Hattoum* v. *Hattoum,* 295 Pa. Super. 169, 175, 441 A.2d 403 (1982); see General Statutes § 46b-91 (a) (1) and (2); Uniform Child Custody Jurisdiction Act § 3, Commissioners' note, 9 U.L.A. 123 (hereinafter UCCJA § 3, Commissioners' note).

Section 7 of the UCCJA, adopted by the Connecticut General Assembly and codified at General Statutes § 46b-97,[16] permits the courts of our state to decline jurisdiction over custody disputes in accordance with that section. Moreover, in adopting § 1 of the act; General Statutes § 46b-91; the legislature has expressed the intent that it is the policy in Connecticut to "assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state . . . ." General Statutes § 46b-91 (a) (3).

By its express language, § 46b-97 (c) directs the Connecticut courts, in considering whether to decline to exercise their proper jurisdiction, to "take into account the following factors, including but not limited to" those enumerated therein; see footnote 3, supra; and thus contemplates that considerations that evolved under the traditional common law doctrine of forum non con-

---

[16] See footnote 3, supra.

veniens; see *Gulf Oil Corporation* v. *Gilbert,* 330 U.S. 501, 508–509, 67 S. Ct. 839, 91 L. Ed. 1055 (1947); are not supplanted by the "inconvenient forum" provision of the UCCJA.[17] UCCJA § 7, Commissioners' note; see also *In re Leonard,* 122 Cal. App. 3d 443, 468, 175 Cal. Rptr. 903 (1981); *William L.* v. *Michelle P.,* 99 Misc. 2d 346, 352–53, 416 N.Y.S.2d 477 (1981). The common law principle of forum non conveniens provides that a court "may resist *imposition* upon its jurisdiction" even when it has jurisdiction. (Emphasis added.) *Gulf Oil Corporation* v. *Gilbert,* supra, 507.

---

[17] Even before the adoption of the UCCJA, the doctrine of forum non conveniens was recognized as applicable to child custody disputes over which the court otherwise had jurisdiction; see, e.g., *Clark* v. *Superior Court,* 73 Cal. App. 3d 298, 309, 140 Cal. Rptr. 709 (1977); see *Loonan* v. *Marino,* 179 N.J. Super. 164, 168, 430 A.2d 975 (1981).

We note that some of the factors in § 46b-97 (c) are not unlike those factors involving private and public interests that are relevant to a forum non conveniens determination in the federal system. *Gulf Oil Corporation* v. *Gilbert,* 330 U.S. 501, 508–509, 67 S. Ct. 839, 91 L. Ed. 1055 (1947); see also *Piper Aircraft Co.* v. *Reyno,* 454 U.S. 235, 257–61, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981), reh. denied, 455 U.S. 928, 102 S. Ct. 1296, 71 L. Ed. 2d 474 (1982). The "closer connection" factor; General Statutes § 46b-97 (c) (2); is comparable to the *Gilbert* court's concern about vexatious or harassing litigation as well as "practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil Corporation* v. *Gilbert,* supra, 508. The "substantial evidence" factor; General Statutes § 46b-97 (c) (3); is comparable to the ease of access to proof and the availability and cost of compulsory process considerations. *Gulf Oil Corporation* v. *Gilbert,* supra, 508. Finally, the underlying UCCJA policy factor; General Statutes § 46b-97 (c) (5); is similar to the concern involving the enforceability of judgments as well as the "public interest" concerns of judicial administration, local interest and choice of law. *Gulf Oil Corporation* v. *Gilbert,* supra, 508–509.

"[T]he ultimate inquiry [on whether the common law doctrine of forum non conveniens should be applied] is where trial will best serve the convenience of the parties and the ends of justice." *Koster* v. *(American) Lumbermens Mutual Casualty Co.,* 330 U.S. 518, 527, 67 S. Ct. 828, 91 L. Ed. 1067 (1947). On the other hand, we agree that the "[f]actors customarily listed for purposes of the general principle of the inconvenient forum (such as convenience of the parties and hardship to the defendant) are also pertinent, *but may under the circumstances be of secondary importance because the child who is not a party is the central figure in the proceedings.*" (Emphasis added.) UCCJA § 7, Commissioners' note.

Moreover, the factors expressed in § 46b-97 (c) are to be considered in view of the overall goal of determining "if it is *in the interest of the child[ren]* that another state assume jurisdiction." (Emphasis added.) General Statutes § 46b-97 (c); see *Agnello* v. *Becker,* 184 Conn. 421, 429, 440 A.2d 172 (1981). The purpose of the inconvenient forum provision thus "is to encourage judicial restraint in exercising jurisdiction whenever another state appears to be in a better position to determine custody of a child." UCCJA § 7, Commissioners' note. As we have noted in conjunction with the forum non conveniens doctrine, the § 46b-97 (c) factors are not preclusive. In passing, we also note that the "home state factor" relied upon by the plaintiff "was never intended to tip the balance of factors toward a new forum." *Mayer* v. *Mayer,* 91 Wis. 2d 342, 356, 283 N.W.2d 591 (1979).[18]

Declining jurisdiction under § 46b-97 is discretionary with the court. By the inclusion of the word "may" in that section, the legislature clearly intended that the inconvenient forum issue in UCCJA cases remain discretionary; see *Breneman* v. *Breneman,* 92 Mich. App. 336, 342, 284 N.W.2d 804 (1979); as is the common law forum non conveniens principle. *Piper Aircraft Co.* v. *Reyno,* 454 U.S. 235, 257, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981), reh. denied, 455 U.S. 928, 102 S. Ct. 1296, 71 L. Ed. 2d 474 (1982); *Gulf Oil Corporation* v. *Gilbert,* supra, 509; *Cady* v. *Hartford Fire Ins. Co.,* 56 Ill. App. 2d 429, 433, 206 N.E.2d 535 (1965); *Silver* v. *Great American Ins. Co.,* 29 N.Y.2d 356, 361, 278 N.E.2d 619, 328 N.Y.S.2d 398 (1972). This discretion must be exercised in accordance with the overall pur-

[18] The Ohio Supreme Court, in pointing out the need for judicial cooperation among the states under the UCCJA, said in an inconvenient forum case: "In matters as serious as child custody, all courts should eliminate the concept of a 'home court' advantage, which operates to the disadvantage of the child." *In re Guardianship of Wonderly,* 67 Ohio St. 2d 178, 188, 423 N.E.2d 420 (1981).

poses of the UCCJA; see General Statutes § 46b-91; which have been summarized by some courts as consisting of the elimination of "jurisdictional fishing with children as bait." *Wheeler* v. *District Court,* 186 Colo. 218, 220, 526 P.2d 658 (1974); *Peterson* v. *Peterson,* 464 A.2d 202, 204 (Me. 1983); *Spaulding* v. *Spaulding,* 460 A.2d 1360, 1363 (Me. 1983). A determination by the court under § 46b-97 that Connecticut "is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum"; General Statutes § 46b-97 (a); will not be reversed absent a clear abuse of discretion. See *Szmyd* v. *Szmyd,* 641 P.2d 14, 18 (Alaska 1982); *Loper* v. *Superior Court,* 126 Ariz. 14, 17, 612 P.2d 65 (1980); *Plas* v. *Superior Court,* supra, 496–97; *Larsen* v. *Larsen,* 5 Kan. App. 2d 284, 292, 615 P.2d 806 (1980); *Murphy* v. *Murphy,* 380 Mass. 454, 459, 404 N.E.2d 69 (1980); see also *Piper Aircraft Co.* v. *Reyno,* supra, 257. This standard of review is necessary in order to "discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child." General Statutes § 46b-91 (a) (4).

The trial court correctly determined that Florida has a "closer connection" with the children than Connecticut in accordance with § 46b-97 (c) (2), which provides that the court "may" consider whether "another state has a closer connection with the child and his family or with the child and one or more of the contestants." From 1969 to 1980, the parties themselves had lived in Florida where both children had been born. Both children resided, attended school and received religious training in Florida until they left that state with their father in August, 1980. At the time they departed from Florida, the children were aged ten and eleven. At the

time of the divorce in 1979, the maternal grandparents and uncles and aunts lived in Florida; the plaintiff apparently had no relatives living there then.[19] The defendant mother, "one . . . of the contestants," remains to this date a Florida resident, and the children since 1980 have lived with her there during the summers. A Florida court had entered both the original dissolution decree in 1979 and the stipulated modification of the judgment affecting the custody arrangement in 1980. The courts of that state, while "relinquishing" jurisdiction to Connecticut, also adjudged that its cooperation with our courts included "resuming jurisdiction of the cause should the Courts of . . . Connecticut express their willingness that this be done." Accordingly, the significant and long term contacts demonstrate that the children have a closer connection to Florida than to Connecticut.

On the other hand, their connection with Connecticut is not at all close. They did reside here apparently from about October, 1981, to June, 1982, during which time they attended school here. Testimony was presented both about their itinerant life with their father from August, 1980, until October, 1981, and after that date when they had returned to Connecticut. The plaintiff, "one . . . of the contestants," presently resides in this state. On this record, the Brown children's connection with Connecticut is slight in comparison to that with Florida.[20]

Further, the trial court also correctly determined that "substantial evidence concerning the children's present

---

[19] There was no evidence presented at the hearing that the plaintiff has any relatives in Florida.

[20] We nevertheless do not intend to diminish Connecticut's strong state interest in assuring that the purposes of the UCCJA; General Statutes § 46b-91; are effectuated in the best interests of any child having even a minimal connection with Connecticut.

and future care is more readily available in Florida."[21] Under § 46b-97 (c), the court "may" properly consider whether "substantial evidence concerning the child's present or future care, protection, training and personal relationships is more readily available in another state." General Statutes § 46b-97 (c) (3). It seems reasonable that the most meaningful resolution of the issue of custody would require evidence concerning the children's life in Florida, Indiana, and North Carolina, as well as in Connecticut. The children, who have resided in Florida since June, 1982, apparently can appear in court to testify in this matter.[22] This is noteworthy because "[s]ince a custody proceeding is concerned with the past and future care of the child by one of the parties, it is of vital importance in most cases that the judge [have] an opportunity to see and hear the contestants and the child." UCCJA § 11, Commissioners' note; see *Agnello* v. *Becker,* supra, 430. Despite the fact that the plaintiff testified in Connecticut, he made no offer of proof that "substantial evidence" was "more readily available" in Connecticut than in Florida.

In passing, we note that § 46b-97 (c) (4), which lists as a factor that "the parties have agreed on another forum," is obviously inapposite. Another statutory factor set out in § 46b-97 is whether "the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in section 46b-91." General Stat-

[21] One court has remarked that "the purpose which pervades the [UCCJA] is to provide that child custody determinations will be made in the state where there is optimum access to evidence. *See* Commissioners' Comments to Section 3 of the Act, 9 Uniform Laws Annotated 123–25 (Master ed. 1979)." *Grubs* v. *Ross,* 291 Or. 263, 270, 630 P.2d 353 (1981).

[22] The trial court's memorandum of decision noted that a custody report, prepared in accordance with the Florida court's order, stated that both children expressed "a strong desire to remain in their mother's custody." That report, however, while finding "nothing detrimental in the mother's home" also said that the writer had "no personal knowledge of the father's environment." The trial court file in this case indicates that a Connecticut Superior Court judge did order a family relations investigation and report concerning the plaintiff's employment.

utes § 46b-97 (c) (5). Although the trial court did not specifically discuss that factor in haec verba, this was dealt with implicitly in the court's disposition. The court properly found that the "substantial evidence" and "close connection" factors militated against the exercise of jurisdiction in Connecticut. Those factors have been given greater emphasis by the drafters of the UCCJA, and were subsequently adopted by the General Assembly, as perhaps the two primary considerations in determining which forum should assume jurisdiction in child custody disputes. General Statutes § 46b-91 (a) (3). Accordingly, we are unpersuaded that the court's finding that Florida, rather than Connecticut, was "a more appropriate forum" within the meaning of § 46b-97 was an abuse of discretion.

### B

The second prong of the plaintiff's claim is that the trial court's action "in dismissing the case for lack of jurisdiction in that it is an inconvenient forum expressly contradicts the finding of the Florida Court Order." The Connecticut court, of course, did not dismiss "for lack of jurisdiction." In assigning error to what was a dismissal on the basis of the inconvenient forum provision of the UCCJA, the plaintiff argues that returning the case to Florida places an unfair burden on the plaintiff especially as the children are in Florida because of the defendant's alleged violation of a court order. In doing so, he claims that the dismissal of this action by the Connecticut court endorses the violation of a court order and also ignores completely the reasons for which Florida relinquishes jurisdiction to Connecticut. We cannot accept the plaintiff's claim in light of the circumstances of this case.

At the outset, we consider arguments that are implicit in the plaintiff's posture here and which he also urged upon us at oral argument: that Connecticut in

passing upon the motion to dismiss on "inconvenient forum" grounds was "bound" by the Florida court's determination stated in its "Order Relinquishing Jurisdiction" and that jurisdiction had been relinquished by Florida to Connecticut. The plaintiff's position misconstrues both the nature of the Florida court's order and the "inconvenient forum" principle within the statutory structure of the UCCJA.

The Florida court's order, as stated above, explicitly reserved the authority of the Florida court to resume jurisdiction over this dispute "should the Courts of the State of Connecticut express their willingness that this be done." The relinquishing by the Florida courts of their jurisdiction over this matter to Connecticut on the ground that Florida was an inconvenient forum clearly does not bind the courts of Connecticut to assume jurisdiction. It is for the courts of this state, and no other, to decide in proceedings brought here whether Connecticut constitutes a more appropriate or inconvenient forum for a custody determination. See, e.g., *Loonan* v. *Marino,* 179 N.J. Super. 164, 168, 430 A.2d 975 (1981).

We affirm here the finding of the Connecticut court that, in accordance with § 46b-97 (a), Connecticut is an inconvenient forum and Florida is "a more appropriate forum" within which to resolve this particular dispute. The touchstone of the UCCJA in general, and of § 46b-97 in particular, is the best interest of the child, not that of the parents. See General Statutes §§ 46b-91, 46b-93, 46b-97 (c), 46b-98 (b); *Agnello* v. *Becker,* supra, 429. While it is true that the defendant did not return the children from their Florida visitation, their residency has been in Florida since September, 1982, by virtue of a Florida court order. We determine elsewhere in this opinion that the action of the trial court does not contravene either the UCCJA or the PKPA. We also agree with Chief Judge Breitel's apt observa-

tion that "[b]oth the [UCCJA] and the case law, however, recognize properly that the apparent imperative to discourage abduction must, when necessary, be submerged to the paramount concern in all custody matters: the best interest of the child." *Matter of Nehra* v. *Uhlar,* 43 N.Y.2d 242, 250, 372 N.E.2d 4, 401 N.Y.S.2d 168 (1977). In the present case, the trial court could, and did, properly determine the application of the inconvenient forum principle.[23]

Moreover, the trial court's action neither ignored the reasons for which Florida relinquished jurisdiction to Connecticut nor did it "expressly contradict the finding of the Florida Court order." The Florida court in relinquishing jurisdiction to this state, in the spirit of interstate cooperation fostered by the UCCJA, expressly provided that such cooperation "includ[ed] resuming jurisdiction of the cause should the Courts of the State of Connecticut express their willingness that this be done." Both states involved have given real meaning to the purpose of their respective analogues to § 7 of the UCCJA which is designed "to encourage judicial restraint in exercising jurisdiction whenever another state appears to be in a better position to determine custody of a child." UCCJA § 7, Commissioners' note; see General Statutes § 46b-97; Fla. Stat. Ann. (West 1983) § 61.1316. Their mutual deference demonstrates "[t]here is no reason why [the] courts of one state should not be able to 'assume with confidence that the courts of the other jurisdiction will act with wisdom and sincerity in all matters pertaining to the welfare of [the] child.' " (Citations omitted.) *Clark* v. *Superior Court,* 73 Cal. App. 3d 298, 309, 140 Cal. Rptr. 709 (1977), quoting *Ferreira* v. *Ferreira,* 9 Cal. 3d 824, 841 n.21, 512 P.2d 304, 109 Cal. Rptr. 80 (1973). There-

---

[23] We also note that the plaintiff adduced very little evidence when he had the opportunity to do so at the hearing on why Connecticut, given all the factual circumstances, would be the more convenient forum even for him.

fore, it can be assumed that the Florida court will address the necessary concerns of the parties, including the claimed abduction of the children.

C

The third prong of the plaintiff's claim is that jurisdiction should be exercised by the Connecticut courts under the Parental Kidnapping Prevention Act of 1980, 28 U.S.C. § 1738A,[24] because Connecticut is the "home state" of the children under that statute. See 28 U.S.C.

[24] 28 U.S.C. § 1738A, entitled "Full faith and credit given to child custody determinations," provides:

"(a) The appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsection (f) of this section, any child custody determination made consistently with the provisions of this section by a court of another State.

"(b) As used in this section, the term—

"(1) 'child' means a person under the age of eighteen;

"(2) 'contestant' means a person, including a parent, who claims a right to custody or visitation of a child;

"(3) 'custody determination' means a judgment, decree, or other order of a court providing for the custody or visitation of a child, and includes permanent and temporary orders, and initial orders and modifications;

"(4) 'home State' means the State in which, immediately preceding the time involved, the child lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old, the State in which the child lived from birth with any of such persons. Periods of temporary absence of any of such persons are counted as part of the six-month or other period;

"(5) 'modification' and 'modify' refer to a custody determination which modifies, replaces, supersedes, or otherwise is made subsequent to, a prior custody determination concerning the same child, whether made by the same court or not;

"(6) 'person acting as a parent' means a person, other than a parent, who has physical custody of a child and who has either been awarded custody by a court or claims a right to custody;

"(7) 'physical custody' means actual possession and control of a child; and

"(8) 'State' means a State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, or a territory or possession of the United States.

"(c) A child custody determination made by a court of a State is consistent with the provisions of this section only if—

■■■■■■■

## § 1738A (b) (4). The plaintiff asserts that the defendant unlawfully and improperly detained the children

"(1) such court has jurisdiction under the law of such State; and

"(2) one of the following conditions is met:

"(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;

"(B) (i) it appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

"(C) the child is physically present in such State and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse;

"(D) (i) it appears that no other State would have jurisdiction under subparagraph (A), (B), (C), or (E), or another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction; or

"(E) the court has continuing jurisdiction pursuant to subsection (d) of this section.

"(d) The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c) (1) of this section continues to be met and such State remains the residence of the child or of any contestant.

"(e) Before a child custody determination is made, reasonable notice and opportunity to be heard shall be given to the contestants, any parent whose parental rights have not been previously terminated and any person who has physical custody of a child.

"(f) A court of a State may modify a determination of the custody of the same child made by a court of another State, if—

"(1) it has jurisdiction to make such a child custody determination; and

"(2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.

"(g) A court of a State shall not exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody determination."

and, for that reason, Connecticut's failure to exercise jurisdiction is contrary to the purposes of the PKPA. We do not agree.

As a threshold matter, we note that it has not been determined by any court of this state or of Florida that the defendant, as a matter of fact or law, has illegally detained these children. Nevertheless, declining jurisdiction in this case does not thwart the stated purposes of the PKPA.[25] "Both the UCCJA and PKPA were enacted to prevent jurisdictional conflict and competition over child custody, and, in particular, to deter parents from abducting children for the purpose of obtaining custody awards." *Peterson* v. *Peterson,* supra. The full faith and credit clause of the federal constitution; U.S. Const., art. IV § 1; supplies the constitutional

---

[25] The Congressional Findings and Declarations of Purposes for the Parental Kidnapping Prevention Act of 1980, Pub. L. 96-611, § 7, 96th Cong., 2d Sess. (1980) provide: "SEC. 7. (a) The Congress finds that—

"(1) there is a large and growing number of cases annually involving disputes between persons claiming rights of custody and visitation of children under the laws, and in the courts, of different States, the District of Columbia, the Commonwealth of Puerto Rico, and the territories and possessions of the United States;

"(2) the laws and practices by which the courts of those jurisdictions determine their jurisdiction to decide such disputes, and the effect to be given the decisions of such disputes by the courts of other jurisdictions, are often inconsistent and conflicting;

"(3) those characteristics of the law and practice in such cases, along with the limits imposed by a Federal system on the authority of each such jurisdiction to conduct investigations and take other actions outside its own boundaries, contribute to a tendency of parties involved in such disputes to frequently resort to the seizure, restraint, concealment, and interstate transportation of children, the disregard of court orders, excessive relitigation of cases, obtaining of conflicting orders by the courts of various jurisdictions, and interstate travel and communication that is so expensive and time consuming as to disrupt their occupations and commercial activities; and

"(4) among the results of those conditions and activities are the failure of the courts of such jurisdictions to give full faith and credit to the judicial proceedings of the other jurisdictions, the deprivation of rights of liberty and property without due process of law, burdens on commerce among such

underpinning of the PKPA. See "The Parental Kidnapping Prevention Act: Constitutionality and Effectiveness," 33 Case Western L. Rev. 89 (1982). The PKPA provides that the courts of every state enforce a child custody determination of another state if made "consistently" with the PKPA provisions. 28 U.S.C. § 1738A (c). Geared as the PKPA is toward establishing national jurisdictional standards that endeavor to reduce interstate child abductions, the application of the PKPA to this case initially turns on the definition of a "custody determination." We believe that the orders of the Florida court which, in effect, generated this Connecticut action, fall squarely within the PKPA

jurisdictions and with foreign nations, and harm to the welfare of children and their parents and other custodians.

"(b) For those reasons it is necessary to establish a national system for locating parents and children who travel from one such jurisdiction to another and are concealed in connection with such disputes, and to establish national standards under which the courts of such jurisdictions will determine their jurisdiction to decide such disputes and the effect to be given by each such jurisdiction to such decisions by the courts of other such jurisdictions.

"(c) The general purposes of sections 6 to 10 of this Act [which, among other things, enacted this note; for full classification, consult USCS Tables volumes] are to—

"(1) promote cooperation between State courts to the end that a determination of custody and visitation is rendered in the State which can best decide the case in the interest of the child;

"(2) promote and expand the exchange of information and other forms of mutual assistance between States which are concerned with the same child;

"(3) facilitate the enforcement of custody and visitation decrees of sister States;

"(4) discourage continuing interstate controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child;

"(5) avoid jurisdictional competition and conflict between State courts in matters of child custody and visitation which have in the past resulted in the shifting of children from State to State with harmful effects on their well-being; and

"(6) deter interstate abductions and other unilateral removals of children undertaken to obtain custody and visitation awards."

definition of a "custody determination." 28 U.S.C. § 1738A (b) (3); see *Belosky* v. *Belosky,* 97 N.M. 365, 640 P.2d 471 (1982).

That conclusion, however, does not in this case mandate the result claimed by the plaintiff. While the PKPA creates a preference for the home state, "it does not significantly disrupt the jurisdictional provisions of [the] UCCJA." *E.E.B.* v. *D.A.,* 89 N.J. 595, 610, 446 A.2d 871 (1982), cert. denied sub nom. *Angle* v. *Bowen,* 459 U.S. 1210, 103 S. Ct. 1203, 75 L. Ed. 2d 445, reh. denied, 460 U.S. 1104, 103 S. Ct. 1806, 76 L. Ed. 2d 369 (1983). In *E.E.B.,* the New Jersey Supreme Court held that the PKPA permits a "home state"; 28 U.S.C. § 1738A (b) (4); to "defer jurisdiction to another state on the ground that the other is a more appropriate forum. 28 U.S.C.A. § 1738A (c) (2) (D)." *E.E.B.* v. *D.A.,* supra, 610–11. We agree with the New Jersey Supreme Court that the determination whether a court of another state constitutes a "more appropriate forum" under the PKPA involves consideration of factors "that [the] UCCJA enumerates as relevant in making a determination of inconvenient forum." Id.; see General Statutes § 46b-97. Therefore, insofar as we have determined that the inconvenient forum provision of § 46b-97 has been correctly applied in this case, we must reject the plaintiff's claim under the PKPA.[26]

## II

We now turn to the plaintiff's second claim that the trial court erred by refusing to permit him, contrary to the intent of the drafters of the UCCJA, to intro-

---

[26] We note that the PKPA permits child custody modification. 28 U.S.C. §§ 1738A (b) (5), 1738A (f). Of course, no custody modification was rendered by the Connecticut court which decided only, as it was permitted to do under both the UCCJA and the PKPA, that Connecticut was an inconvenient forum for the purpose of making this custody determination.

duce evidence in his own behalf "in a critical hearing." The plaintiff maintains that the UCCJA mechanism for introducing evidence in a Connecticut court from out-of-state witnesses; General Statutes §§ 46b-109 (b) and 46b-108;[27] required the trial court, at the hearing on the motion to dismiss, to grant his request made at the hearing that the defendant, then living in Florida, "appear to give testimony prior to the Court ruling on the motion before it."[28] By denying this request, the plaintiff argues, the court in effect prevented him "from presenting witnesses in his [own] behalf." We do not agree.

The plaintiff's brief first cites § 46b-109 (b) in support of his claim. That section, however, is wholly discretionary providing that the Connecticut court "may request" the Florida court "to order" the defendant "to appear in the [Connecticut] proceedings." In this case, the plaintiff asked the Connecticut court that the

---

[27] The plaintiff cited General Statutes § 46b-109 (b), entitled "Hearings and studies in another state; order to appear," which provides: "(b) A court of this state may request the appropriate court of another state to order a party to custody proceedings pending in the court of this state to appear in the proceedings, and if that party has physical custody of the child, to appear with the child. The request may state that travel and other necessary expenses of the party and of the child whose appearance is desired will be assessed against another party or will otherwise be paid."

He also cited § 46b-108, entitled "Taking testimony in another state," which provides: "In addition to other procedural devices available to a party, any party to the proceeding or a guardian ad litem or other representative of the child may adduce testimony of witnesses, including parties and the child, by deposition or otherwise, in another state. The court on its own motion may direct that the testimony of a person be taken in another state and may prescribe the manner in which and the terms upon which the testimony shall be taken."

[28] An examination of the transcript of the hearing discloses that after the plaintiff, who had been subpoenaed by the defense, had been examined and cross-examined, the following occurred:

"The Court: . . . Anything else?

defendant "be ordered to appear" because he would be "requiring" her testimony. Even if this request sought an order under § 46b-109 (b), the court did not abuse its discretion in refusing to do so, because the only issue before the trial court was that framed by the motion to dismiss, i.e., the application of the inconvenient forum doctrine.[29] Second, the plaintiff's reference to § 46b-108 in support of this claim does not avail him. Section 46b-108 permits, inter alia, the taking of testimony of out-of-state witnesses where they are located.[30] No such request was ever made to the trial court. In oral argument before us, the plaintiff admitted that he had never tried to depose the defendant. Additionally, he never sought a continuance in order to take advantage of any "procedural devices available" under the UCCJA. See General Statutes § 46b-108.

There is no error.

In this opinion the other judges concurred.

"Mr. Rosa: Yes, your Honor, I will be requiring the testimony of Kathleen Brown. I would simply request that she be ordered to appear.

"Mr. Rader: Well, your Honor, the whole gist of this motion to dismiss is to determine whether or not this is a convenient forum for Kathleen Brown. It doesn't make any sense that Kathleen Brown would have to come up here to determine this motion.

"Mr. Rosa: Well, I think she's—the purpose of the hearing is to allow the court to hear all . . . of the relevant facts.

"The Court: That's a hearing on the merits. Mr. Rader has been heard on this particular motion, he isn't presenting his client. Do you have any witnesses to present at this time?"

[29] We point out, however, that the appearance of the defendant in Connecticut, as requested by the plaintiff, was not necessary because her testimony could have been presented by deposition. General Statutes § 46b-108.

[30] Section 46b-108 provides in part: "The court on its own motion may direct that the testimony of a person be taken in another state and may prescribe the manner in which and the terms upon which the testimony shall be taken." The trial court, of course, did not do this, and reasonably so, because the inconvenient forum issue, not the custody issue, was before it on this motion to dismiss.