[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The above-captioned cases are related matters. In Porter v. Stockwell, No. FA90-097208, the plaintiff, Patricia Porter, seeks orders from this court giving custody of the children, Amber Dwan Stockwell and Daniell Patricia Stockwell, to her. In Porter v. Stockwell, No. FA90-098170, the defendant, Robert Daniel Stockwell, requests enforcement of existing Idaho judgments that vest custody of both children in him. Danielle, the younger child, is issue of a former marriage between the parties. Amber, however, is the plaintiff's daughter and, for purposes of these cases, the defendant's stepchild.
These cases require consideration of the Uniform Child Custody Jurisdiction Act (UCCJA) which is in effect in both Connecticut and Idaho. Connecticut General Statutes Sections 46b-91 through 46b-114, Idaho Code Sections 32-1101 through 32-1126. No action has been taken in the second case (No. FA90-098270) pending decision on the defendant's motion to dismiss the first case (No. FA90-097208). Six grounds for dismissal are advocated, namely: prior litigation of subject matter jurisdiction in Idaho; prior litigation of subject matter jurisdiction in Connecticut; failure by the plaintiff to file the affidavit required by Connecticut General Statutes Section 46b-99; reprehensible conduct of the plaintiff; inconvenient forum; and simultaneous proceedings in other states.
 I.
Because former proceedings are involved, it is useful at the outset to summarize those proceedings and their results. The custody of Amber and Danielle became the subject of judicial action by the Idaho District Court in 1984 when, with the consent of both parties, the parents of the defendant were appointed guardians of the children. At the time, the plaintiff had filed, CT Page 913 in the District court, a pro se petition for divorce from the defendant. Her petition stated that Amber and Danielle were issue of the marriage. The defendant's name had been placed on Amber's birth certificate as her father. On June 7, 1985, the divorce was granted. The degree, however, contained no provisions for the care, custody or support of the children. Later in 1984, the plaintiff married Rick Porter and the defendant married Rhonda Stockwell.
After the plaintiff's marriage to Rick Porter, she petitioned the District Court to terminate the guardianship of the defendant's parents. Her verified petition alleged that both children were the issue of her former marriage to the defendant. At the hearing held on October 21, 1985 before Magistrate Drescher, both parties favored ending the guardianship but each of them wanted custody of the children. Amber's expressed preference was to be placed with the defendant while Danielle's wish was to live with the plaintiff. In closing argument, the plaintiff informed Magistrate Drescher that Amber was not the defendant's child. She also stated that Amber was ignorant of that fact.
Magistrate Drescher awarded custody of both children to the plaintiff subject to reasonable rights of visitation by the defendant. Reasonable visitation was defined as the third weekend of each month and commencing in 1986 an annual extended summer visit from June 15 to August 15. In the best interest of Amber, Magistrate Drescher admonished the parties not to reveal the child's illegitimacy but to continue the fiction of parenthood that they had maintained over the years. When custody was granted to the plaintiff, she was a resident of Nampa, Idaho and the defendant was living in Portland, Oregon.
In January of 1986, the defendant returned to Idaho and pressed his visitation rights. In March of 1986, the plaintiff was informed by Amber and Danielle that when they lived abroad with their guardians, the defendant's father had been sexually abusive. The complaint of sexual abuse was claimed by the plaintiff to be a principal reason why she and her husband left Idaho and came to Connecticut. Apparently they were advised by counsel that Magistrate Drescher's orders did not include a prohibition against leaving Idaho with the children.
The plaintiff's departure from Idaho prompted the defendant to secure an order from Magistrate Drescher for the plaintiff to show cause why the custodianship of the children should not be changed to him. The show cause order was issued on May 23, 1986 with a hearing scheduled for the following June 10. The show cause order recited that the defendant's Idaho residency and the recent residency, in Idaho, of the plaintiff and the children meant that, under the UCCJA, jurisdiction was in the District CT Page 914 Court.
Service of the show cause order was made on the plaintiff's Idaho attorney who appeared at the hearing. The plaintiff did not appear. Evidence was given by the defendant, his wife and sister which evidence seemed to include the disregard by the plaintiff of Magistrate Drescher's admonition that Amber not be told that the defendant was not her father. The hearing resulted in a transfer of Danielle's custody to the defendant. Magistrate Drescher declined to transfer Amber's custody but reiterated that pursuant to his earlier order, the defendant's right of visitation included the period from June 15 to August 15 of every year. The plaintiff was ordered to return the children to the defendant's residence, 1063 East Lincoln Avenue, Nampa, Idaho.
Whether the plaintiff's move to Connecticut was surreptitious became a matter of dispute. Magistrate Drescher concluded that it was. The children were removed from school with no forwarding address or school district information. The plaintiff left no forwarding address for herself. In point of fact, however, Magistrate Drescher's orders became effective after Stockwell v. Porter, No. 249857, a habeas corpus action brought by the defendant in the Superior Court at New Haven. On August 8, 1986, Judge Hauser ruled that Connecticut did not have jurisdiction to determine the custody of the children and ordered their return to Idaho.
After the children were returned to Idaho, the defendant, on September 3, 1986, secured on order from Magistrate Drescher extending Amber's stay with him until September 24, 1986. Although no continuance of that order has been supplied, it is evident from the plaintiff's complaint in this court (No. FA90-097208) and from the Idaho court records that Amber was with the defendant on January 13, 1987 when Magistrate Drescher held a second custody hearings. Upon the second hearing, Magistrate Drescher again awarded custody of Danielle to the defendant but found no basis in Idaho law for giving him custody of Amber. Magistrate Drescher acknowledged that his rulings meant a separation of the girls but attributed the result to the plaintiff's conduct in absconding from Idaho with the children.
Both parties appealed Magistrate Drescher's decision to the District Court. Judge Doolittle, sitting as an appellate judge, affirmed the magisterial ruling of a change of custodian for Danielle. With respect to Amber, Judge Doolittle agreed with Magistrate Drescher that Idaho law accorded a presumption for custody in the natural parent absent proof of abandonment or parental unfitness. Following Judge Doolittle's decision, proceedings in Idaho ended as to Danielle. The defendant, however, appealed the denial of his petition for custody of Amber CT Page 915 to the Supreme Court of Idaho.
On June 5, 1989, a decision was issued on the defendant's appeal. Stockwell (Porter) v. Stockwell, 116 Idaho 297, 775 P.2d 611
(1989). The Idaho Supreme Court held that a showing of abandonment or unfitness by the natural parent was not required where a child had been in the custody or equivalent of a nonparent for an appreciable time and had developed a bond with the nonparent. The case was remanded to the District Court with direction to consider Amber's best interests in determining who should be entrusted with her custody. 775 P.2d at 614. The Supreme Court also directed that the District Court require the parties to undergo meditation before commencing further formal custody hearings. 775 P.2d at 615.
Meditation was unsuccessful and the custody action on remand was tried before Magistrate DeMeyer. Before the hearing started, some matters occurred that are material to the jurisdictional claims. First, a motion for leave to file an amicus brief accompanied by a brief entitled "Brief In Support Of Change To More Convenient Forum" was submitted to the District Court by Attorney Laura Mooney of Beacon Falls, Connecticut. Second, the defendant had returned to live in Oregon. His affidavit, on file in this court, states that he and his wife moved to Oregon in late January or early February, 1989, which made him an Oregon resident several months before the Idaho Supreme Court's decision. Third, the defendant, in June, 1989, permitted Amber and Danielle to stay with the plaintiff in Connecticut for the 1989-90 school year. Apparently, the defendant was under the impression that he and the plaintiff would unite in petitioning the District Court for an order whereby each of them would have custody of the children in alternate years. Before Magistrate DeMeyer, the plaintiff rejected the idea of alternating yearly custody.
At the hearing on March 16, 1990, Magistrate DeMeyer ruled that the District Court had jurisdiction to decide the issue of Amber's custody. On April 20, 1990, Magistrate DeMeyer issued findings of fact and conclusions of law supporting his decision to award the guardianship of Amber to the defendant with visitation in the plaintiff from June 15 until August 15 of every year. On April 26, 1990, a formal judgment was entered respecting the guardianship and ordering the plaintiff to return Amber and Danielle to the defendant's control and custody by May 1, 1990.
The plaintiff's failure to return the children was cause for contempt proceedings in the District Court. Magistrate DeMeyer's order of July 5, 1990 set a continuance date of July 26. When the plaintiff and her counsel failed to appear on the continuance date, Magistrate DeMeyer adjudged her in contempt. Prior to the contempt hearing, Magistrate DeMeyer was informed that the CT Page 916 plaintiff had instituted a custody proceeding in Connecticut (Porter v. Stockwell, No. FA90-097208).[1] He described the plaintiff's Connecticut action as appearing to be a collateral attack on the Idaho court's previously entered judgment.
The final document from Idaho is the plaintiff's objections to the contempt order. This document was filed in the District Court on July 30, 1990. No action appears to have been taken on the plaintiff's objections.
 II.
Four separate grounds for subject matter jurisdiction are set fourth in the UCCJA, namely: (1) home state of the child; (2) best interest of the child; (3) physical presence of the child coupled with abandonment or the existence or threat of mistreatment or abuse or that the child is otherwise neglected or dependent; (4) absence of a jurisdictional base in any other state or the declination of another state to exercise jurisdiction on the ground that this state is the more appropriate forum and that it is in the child's best interest that this state assume jurisdiction. General Statutes Section 46b-93. Grounds (1) and (2) have been described as major jurisdictional bases while grounds (3) and (4) have been classified as limited in nature to the factual situations envisioned therein. Barden v. Blau, 712 P.2d 481,483 (Col. 1986)[2] Only grounds (1) and (2) are at issue here.
The defendant's motion to dismiss based upon prior litigation of subject matter jurisdiction in Idaho relies upon the decisions of the Supreme Court of the United States in Stoll v. Gottlieb,305 U.S. 165, 177, 59 S.Ct. 134, 83 L.Ed. 104, reh. denied305 U.S. 675, 59 S.Ct. 250, 83 L.Ed. 437 (1938); Durfee v. Duke,375 U.S. 106, 111-12, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963) and Underwriters National Insurance Co. v. North Carolina Life Accident Health Insurance Guaranty Assn., 455 U.S. 691, 706,102 S.Ct. 1357, 71 L.Ed. 558 (1982). Taken together, these cases stand for the proposition that a judgment is entitled to full faith and credit even as to matters of jurisdiction when inquiry by a second court discloses that the jurisdictional questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment. Similar decisions in this state and in Idaho are Morabito v. Wachsman, 191 Conn. 92, 98,463 A.2d 593 (1983) and Soden International, Inc. v. First Security Bank of Idaho, 108 Idaho 732, 701 P.2d 1297, 1299 (1985).
Not discussed in the briefs of either party, however, is the procedural impact of the full faith and credit clause[3] upon local jurisprudence. The clause requires a state to presume the validity of the judgment of another state and "the burden of CT Page 917 proving a lack of jurisdiction `rests heavily upon the assailant.'" Williams v. North Carolina, 325 U.S. 226, 233-34,65 S.Ct. 1092, 89 L.Ed. 1577, reh. denied, 325 U.S. 895,65 S.Ct. 1560, 89 L.Ed. 2006 (1945); Packer Plastics, Inc. v. Laundon,214 Conn. 52, 57, 570 A.2d 687 (1990). "If [the judgment] appears on its fact to be a record of a court of general jurisdiction, such jurisdiction over the cause and the parties is to be presumed unless disproved by extrinsic evidence, or by the record itself." Cool v. Cook, 342 U.S. 126, 128, 72 S.Ct. 157, 96 L.Ed. 146
(1951).
In determining whether the plaintiff has sustained the burden imposed by the full faith and credit clause of proving an absence of subject matter jurisdiction in Idaho, the court must turn first to the brief sent by Attorney Mooney to the District Court. As heretofore noted, that brief was entitled "Brief In Support of Change To More Convenient Forum" an issue quite different, under the UCCJA, from a contention of a lack of subject matter jurisdiction, Brown v. Brown, 195 Conn. 98, 107, 486 A.2d 1116
(1985), although the brief mentioned to the defendant's residence in Oregon "for several years" and to the children's residency with their mother in Connecticut for more than six months preceding the scheduled date for trial. Attorney Mooney's brief may have been the reason for the defendant's "Pretrial Memorandum Re Issues Pending On Remand From The Idaho Supreme Court." The memorandum asserted that Idaho's jurisdiction was unaffected by the inconvenient forum provision of the UCCJA (General Statutes Section 46b-97; Idaho Code Section 32-1107) because the proceeding before Magistrate DeMeyer was simply a continuation of the defendant's request for a modification of Amber's custody previously ruled on by Magistrate Drescher, Judge Doolittle and the Supreme Court of Idaho.
Magistrate DeMeyer's Findings of Fact and Conclusions of Law recite that Attorney Mooney's Motion For Leave to File an Amicus Brief was denied. Her brief, however, was considered at the trial when it was adopted by the plaintiff's Idaho attorney as shown by the colloquy reproduced below.
 MR. WILLIAMS: Before I proceed, your Honor, and I apologize for this being some what out of order. I think I should have done it before Mr. Miller started, but it would be my position and I would like to make it for the record, that . . . the state of Idaho and this court in particular, is not the proper forum and I think . . . you've had submitted to you, the briefing which I would adopt in my argument, concerning the forum of CT Page 918 convenience.
 I don't want to waive that and I don't want it to be interpreted that I'm waiving that by participating in the proceedings, but — so the court would bear with me, . . . I would simply make that objection for the record and I think you have on file the appropriate briefing on that particular matter.
 THE COURT: Okay, the brief and the motion were received but they obviously were never filed since it wasn't by a party to the action nor is it by an attorney licensed to practice in this state. But, even with that in mind, Mr. Williams, I will tell you that I have reviewed that, I will consider your motion now since you are obviously a licensed and practicing member of this bar. And considering those arguments and the arguments set forth in the pre trial memorandum of Mr. Miller, I believe we have jurisdiction, this is the appropriate place to reserve these particular issues and I'm going to continue to exercise jurisdiction.
Subject matter jurisdiction is a requirement that cannot be waived by any party. Neyland v. Board of Education, 195 Conn. 174,177, 487 A.2d 514 (1985). A party can defend against the enforcement of a foreign judgment on the ground of lack of subject matter jurisdiction unless that issue was fully litigated before the rendering court. Underwriters National Insurance Co. v. North Carolina Life Accident Health Insurance Guaranty Ass'n, supra at 404; see Packer Plastics, Inc., v. Laundon, supra at 506. From the documents submitted, the court must conclude that the issue of subject matter jurisdiction was neither fairly presented to Magistrate DeMeyer nor decided by him as required by the decisions from the Supreme Courts of the United States, Connecticut and Idaho upon which the defendant relies. Subject matter jurisdiction is a question treated separately in the UCCJA from that of forum non conveniens, Brown v. Brown, supra, and a continuation of subject matter jurisdiction under the requirements of the UCCJA can be different from a continuation of jurisdiction under local law. Kioukis v. Kioukis, 185 Conn. 249, 255,440 A.2d 894 (1981). Moreover, the court's conclusion has been reinforced by its communication with Magistrate DeMeyer as mandated by General Statutes Section 46b-96 (c).[4]
CT Page 919
Further, the court is of the opinion that the defendant's continued residence in Oregon from late January or early February, 1989 and the children's residence with the plaintiff in Connecticut from June, 1989 meant that Idaho did not have subject matter jurisdiction under the UCCJA's "home state"[5] or "best interest"[6] provisions on January 25, 1990 when the trial date was scheduled or on March 16, 1990 when the trial before Magistrate DeMeyer commenced. In interstate child custody matters, continuing jurisdiction to modify an original custody judgment is lost when the child and both parents have removed themselves from the state where the original judgment was rendered. Brown v. Brown, 476 So.2d 114, 116 (Ala.Civ.App. 1985). "If . . . all the persons involved have moved away . . . modification jurisdiction would shift elsewhere." Perez v. Perez, 212 Conn. 63, 72, 561 A.2d 907
(1989); Kioukis v. Kioukis, supra. Consequently, the Idaho judgments respecting the custody of Amber and Danielle do not preclude the court from considering the plaintiff's petition to modify those judgments. See General Statutes Section 46b-104.
Equally unpersuasive is the defendant's argument that the judgment rendered by Judge Hauser in Stockwell v. Porter, No. 24987 effectively foreclosed the jurisdiction of the Superior Court. Judge Hauser's decision must be viewed as limited to the facts before him on August 8, 1986. Connecticut has jurisdiction to make or modify a custody decree if it is the home state of the child at the commencement of the proceeding. General Statutes Sections 46b-92(6) and (7), 46b-93(a)(1)(A); Perez v. Perez, supra at 70. The words "at the commencement of the proceeding" refer to the immediate proceeding or, as pertains to these cases, the plaintiff's complaint in FA90-097208. Kioukis v. Kioukis, supra at 257, Barden v. Blau, supra at 485; L.F. v. G.W.F.,443 A.2d 751, 755 (N.J. Super A.D. 1982).
The defendant's next claim that the court lacks subject matter jurisdiction concerns the plaintiff's failure to comply with the provisions of General Statutes Section 46b-99 (a). The statute recites that in a UCCJA action, every party shall give certain information about the child under oath in the first pleading or in an affidavit attached to the first pleading. The plaintiff's complaint was not verified and no affidavit was attached to it. Subsequently, on September 4, 1990, the plaintiff moved to amend her complaint through the filing of the proper affidavit.
In order to implement the policy of the UCCJA, a court may overlook formal defects when circumstances warrant such action. Schurman v. Schurman, 188 Conn. 268, 274, 449 A.2d 169 (1982). Such circumstances were present here as from the exhibits introduced, the arguments of counsel and the averments of the CT Page 920 complaint, the court was made aware of all aspects of the Idaho litigation. The presence of the word "shall" in a statute does not automatically mean that a failure to comply with its provisions is a jurisdictional defect that requires a dismissal. Rather, the test for determining if "shall" connotes a mandatory or directory obligation is whether the prescribed mode of action is of the essence of the thing to be accomplished and that test must be applied consistently with the purpose of the statute. LeConche v. Elligers, 215 Conn. 701, 710, ___ A.2d ___ (1990); see Vartuli v. Sotire, 192 Conn. 353, 360, 472 A.2d 336 (1984). Noted are the provisions of Sections 46b-99 (b) and (c) which entitle the court to examine the parties on the information furnished under Section 46b-99 (a) and which impose upon the parties a continuing duty to disclose information about the child that may be received during the proceeding. Although Section 46b-99 (a) may be mandatory in scope, it is not jurisdictional in nature. Instead, Section 46b-99 (a) is designed to aid the court in deciding if it has jurisdiction under Section 46b-93 and, if so, whether jurisdiction should be declined in line with Sections 46b-96, 46b-97 and 46b-98. See Peery v. Peery, 453 So.2d 635,639-40 (La.App. 1984).
 III.
Implicit from the foregoing section is that Connecticut qualifies as the children's home state. Remaining for discussion is whether any of the reasons advanced by the defendant amounts to a cogent reason for jurisdiction to be declined in as much as the intent of the UCCJA is to vest only one state with jurisdiction at any given time. Grynkewich v. McGinley, 3 Conn. App. 541, 544
(1985).
Once jurisdictional is established, the paramount consideration in determining whether to exercise it is the present and future welfare of the child. Brauch v. Shaw, 432 A.2d 1, 6 (N.H. 1981). Having concluded that Idaho no longer had subject matter jurisdiction, the court cannot consider either simultaneous proceedings in another state, Section 46b-96; inconvenient forum, Section 46b-97; or reprehensible conduct by the plaintiff, Section 46b-98; as valid reasons to decline jurisdiction in Porter v. Stockwell, No. FA90-097208. In conclusion, the court must say that the availability of the children and their present school and counseling records puts Connecticut in position to exercise "best interest" as well as "home state" jurisdiction.
 IV.
The defendant's motion to dismiss is denied. The plaintiff's motion to amend her complaint is granted. The court's jurisdictional ruling is, of course, not a prediction as to the CT Page 921 outcome of the custody dispute upon a trial of the merits of the parties' claims.
BARNETT, J.
ENDNOTES