## Anthony Agnello v. Virginia Becker

Bogdanski, C. J., Peters, Healey, Armentano and Shea, Js.

Argued February 11—decision released June 16, 1981

422

*Herbert F. Rosenberg,* for the appellant (plaintiff).

*David P. Ball,* with whom, on the brief, was *Steven M. Olivo,* for the appellee (defendant).

ARTHUR H. HEALEY, J. In this case, the plaintiff appeals from the judgment of the trial court which refused to order the return of a minor child to the custody of the plaintiff and to the state of New Jersey, and failed to find the defendant in contempt. It involves the application of the Uniform Child Custody Jurisdiction Act (UCCJA), which has been adopted by both Connecticut and New Jersey.[1]

The circumstances which generated this action are as follows: The plaintiff and the defendant lived together out of wedlock from February, 1974, until September, 1978, in the state of New Jersey. A female child was born to them on June 23, 1977.

On September 16, 1978, the plaintiff and the defendant separated. In November, 1978, the plaintiff removed the child from the defendant's home while the defendant was at work. For nearly one

[1] See Connecticut General Statutes §§ 46b-90 through 46b-114 and N.J. Stat. Ann. §§ 2A: 34-28 through 2A: 34-52. The Uniform Child Custody Jurisdiction Act became effective in Connecticut on October 1, 1978; Public Acts 1978, No. 78-318; and in New Jersey on July 3, 1979. N.J. Stat. Ann. § 2A: 34-28.

year, the child lived with the plaintiff. During this time, the defendant hired two investigators to find Nicole. The defendant finally discovered her whereabouts in October, 1979. On November 15, 1979, the defendant removed the child from a nursery school parking lot. She brought the child with her to the state of Connecticut, where she had assumed residence about one week earlier. Prior to November 15, 1979, the child had lived her entire life in New Jersey, and had never been out of the state.

On or about November 24, 1979, the plaintiff instituted an action to obtain custody of the child in the Superior Court, Chancery Division, of Passaic County in New Jersey. This action was instituted pursuant to the UCCJA. N. J. Stat. Ann. §§ 2A: 34-28 through 2A: 34-52. On that same date, the New Jersey court entered an ex parte order and directed that "temporary custody of [the child] be . . . awarded to the plaintiff until further order of this court" and that the "defendant . . . forthwith return custody of the child to the plaintiff."[2] The court further ordered that the defendant appear before it on December 14, 1979, or as soon as possible thereafter, to "show cause . . . why the within order should not be made permanent." The "show cause" order was personally served upon the defendant in Connecticut by a deputy sheriff for Fairfield County on December 9, 1979.[3]

---

[2] The order also "enjoined [the defendant, her agents or employees] from removing the child from the jurisdiction of this Court."

[3] At the hearing in the trial court, the defendant admitted that on December 9, 1979, a sheriff served papers that she was to show up in court for a hearing in New Jersey on December 14, 1979. At the hearing on December 14, 1979, the New Jersey court found that "the defendant was served with original process personally by a deputy sheriff of Fairfield County, Connecticut."

The defendant retained the services of a New Jersey attorney,[4] who appeared at the December 14, 1979 hearing. Upon the attorney's advice, the defendant did not present herself or the child in court on that date. After hearing argument by counsel on December 14, 1979, the New Jersey court found that it had jurisdiction to make a child custody determination pursuant to the UCCJA, and advised the defendant to "return the child to this Jurisdiction and to the custody of the Plaintiff herein by 12 o'clock Noon, December 17, 1979."[5] The defendant received by mail from her attorney an unsigned copy of the court's order. The plaintiff contends that a copy of this order was personally served upon the defendant by a deputy sheriff for Fairfield County in January, 1980. The defendant has not returned the child to the custody of the plaintiff or to the state of New Jersey.

The plaintiff instituted the present action in the Superior Court for the judicial district of Danbury in January, 1980, requesting the court to enforce the orders of the New Jersey court, and to adopt those orders as the orders of the Connecticut Superior Court, pursuant to the UCCJA; General Statutes

[4] At the December, 1979 hearing, the New Jersey court found that the defendant appeared by her counsel, Walter Kern.

[5] A certified copy of this order was filed with the Superior Court at Danbury pursuant to the Uniform Child Custody Jurisdiction Act. See General Statutes § 46b-105 which provides: "(a) A certified copy of a custody decree of another state may be filed in the office of the clerk of the superior court. The clerk shall treat the decree in the same manner as a custody decree of the superior court. A custody decree so filed has the same effect and shall be enforced in like manner as a custody decree rendered by the superior court.

"(b) A person violating a custody decree of another state which makes it necessary to enforce the decree in this state may be required to pay necessary travel and other expenses, including attorneys' fees, incurred by the party entitled to the custody or his witnesses."

§§ 46b-90 through 46b-114;[6] and to enforce the same by contempt. The defendant appeared by counsel, who moved to dismiss the proceedings, to grant custody of the child to the defendant, and to refer the matter to the family relations officer.

On February 4, 1980, the Superior Court, *Glass, J.*, heard the parties, denied the defendant's motion to dismiss, denied the plaintiff's citation for contempt, and referred the matter to the family relations officer.[7] The court, *Glass J.*, reaffirmed these orders after reargument on March 3, 1980. The plaintiff has instituted this appeal from those decisions.

On various grounds, the plaintiff challenges the ruling of the trial court in failing to direct the return of the child to the plaintiff's custody and to New Jersey, and in refusing to hold the defendant in contempt.

This case appears to be the first in this court in which we are asked to construe the provisions of the UCCJA, adopted by our legislature in 1978, and codified in chapter 815o of the General Statutes, §§ 46b-90 through 46b-114. The uniform act was approved by the National Conference of Commissioners on Uniform State Laws (hereinafter com-

---

[6] General Statutes § 46b-103 provides: "The courts of this state shall recognize and enforce an inital or modification decree of a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with this chapter or which was made under factual circumstances meeting the jurisdictional standards of this chapter, so long as this decree has not been modified in accordance with jurisdictional standards substantially similar to those of this chapter."

[7] A portion of the New Jersey court's order of November 24, 1979, was "that the Passaic County Probation make a complete and thorough investigation regarding custody of this child and that a report of the findings be filed with this court forthwith."

mission), and the American Bar Association, in 1968. As of the summer of 1980, the act had been adopted, with some variations, in over forty states. See Bodenheimer, "Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction under the UCCJA," 14 Fam. L. Q. 203 (1981).

As one of its stated purposes, the act seeks to "[a]void jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being." General Statutes § 46b-91(a) (1); see N.J. Stat. Ann. § 2A: 34-29(a). The act hopes to "deter abductions ...; assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection; [and] avoid relitigation of custody decisions of other states .... " General Statutes § 46b-91(a);[8] see N.J. Stat. Ann. § 2A:

[8] General Statutes § 46b-91 provides in full: "(a) The general purposes of this chapter are to: (1) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being; (2) promote cooperation with the courts of other states to the end that a custody decree is rendered in a state which can best decide the case in the interest of the child; (3) assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state; (4) discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child; (5) deter abductions and other unilateral removals of children undertaken to obtain custody awards; (6) avoid relitigation of custody decisions of other states in this state insofar as feasible; (7) facilitate the enforcement of custody decrees of other states; (8) promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of

34-29. Our act expressly provides that "[t]he courts of this state shall recognize and enforce an initial or modification decree of a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with this chapter." General Statutes § 46b-103.[9]

One of the conclusions of the trial court attacked by the plaintiff is that the New Jersey court did not have jurisdiction over the matter and that Connecticut was a more appropriate jurisdiction in which to determine the custody question. We agree with the plaintiff that the New Jersey court clearly had jurisdiction under the UCCJA and that the Connecticut trial court should have recognized and enforced the New Jersey decree.

The UCCJA sets forth the bases for jurisdiction of a court to make a child custody determination. See General Statutes § 46b-93(a);[10] N.J. Stat. Ann.

other states concerned with the same child; and (9) make uniform the laws of the states which enact The Uniform Child Custody Jurisdiction Act.

"(b) This chapter shall be construed to promote the general purposes stated in this section."

[9] For two excellent articles on the act, see Bodenheimer, "Progress under the Uniform Child Custody Jurisdiction Act and Remaining Problems: Punitive Decrees, Joint Custody, and Excessive Modification," 65 Cal. L. Rev. 978 (1977); Foster & Freed, "Child Snatching and Custodial Fights: The Case for the Uniform Child Custody Jurisdiction Act," 28 Hastings L.J. 1011 (1977); see also the comprehensive annotation in 96 A.L.R.3d 968.

[10] General Statutes § 46b-93(a) provides: "The superior court shall have jurisdiction to make a child custody determination by inital or modification decree if: (1) This state (A) is the home state of the child at the time of commencement of the proceeding, or (B) had been the child's home state within six months before the commencement of the proceeding and child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or (2) it is in the best interest of the child that a court of this state assume jurisdiction because (A) the

§ 2A: 34-31(a). As the commissioners' note to the uniform act makes clear: "In the first place, a court in the child's home state has jurisdiction, and secondly, *if there is no home state* or the child and his family have *equal or stronger ties* with another state, a court in that state has jurisdiction." (Emphasis added.) 9 U.L.A., Uniform Child Custody Jurisdiction Act § 3, commissioners' note. "Home state" is defined in the act to mean "the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six consecutive months . . . ." General Statutes § 46b-92(5); N.J. Stat. Ann. § 2A: 34-30(e). The act extends the home state rule for an additional six-month period in order to allow suit in the home state after the child's departure. 9 U.L.A., supra, § 3, commissioners' note; see General Statutes § 46b-93; N.J. Stat. Ann. § 2A: 34-30(e). "The main objective is to protect a parent who has been left by his spouse taking the child along. The provision makes clear that the stay-at-home parent, if he acts promptly, may start proceedings in his own state if he desires, without the necessity of attempting to base jurisdiction on paragraph (2)." 9 U.L.A., supra, § 3, com-

child and his parents, or the child and at least one contestant, have a significant connection with this state, and (B) there is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationships; or (3) the child is physically present in this state and (A) the child has been abandoned or (B) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or (4) (A) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with subdivisions (2) or (3) of this subsection, or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (B) it is in the best interest of the child that this court assume jurisdiction."

missioners' note. Paragraph (2), i.e., General Statutes § 46b-93(a) (2), N.J. Stat. Ann. § 2A: 34-31(a) (2), provides that a state has jurisdiction if "it is in the best interest of the child that a court of this State assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this State, *and* (ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships." (Emphasis added.) 9 U.L.A., supra, § 3 (a) (2).

Under the act, New Jersey clearly had jurisdiction. The evidence at trial indicated that before the November 15, 1979 abduction by the defendant, the child had lived her entire life in New Jersey, and that the plaintiff instituted his custody suit in New Jersey within a month after the abduction.

Jurisdiction may be found to exist under the UCCJA, as the trial court correctly concluded, if it is in the best interest of the child that a court of the state assume jurisdiction. General Statutes § 46b-93(a) (2); N.J. Stat. Ann. § 2A: 34-31 (a) (2). To satisfy the "best interest" test, however, the child and at least one contestant must have a "significant connection" with this state; General Statutes § 46b-93(a) (2) (A); N.J. Stat. Ann. § 2A: 34-31 (a) (2) (i); *and* there must be available in this state "substantial evidence concerning the child's present or future care, protection, training and personal relationships." General Statutes § 46b-93(a) (2) (B); N.J. Stat. Ann. § 2A: 34-31 (a) (2) (ii). The UCCJA expressly notes that "[p]hysical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody." See 9 U.L.A., supra, § 3 (c). In adopting General Statutes § 46b-93(c), which is our counterpart of

§ 3(c) of the uniform act, our legislature decided to omit the words "while desirable."

Upon a review of the evidence, we conclude that the trial court's finding that it was in the best interests of the child to determine custody in Connecticut was clearly erroneous. See Practice Book § 3060D. The evidence does not demonstrate that the child and at least one contestant have a "significant connection" with this state *and* that there is available in Connecticut "substantial evidence concerning the child's present or future care, protection, training and personal relationships." We observe that the fact that the child is in this state with the defendant by reason of the child's abduction from New Jersey is not, under the circumstances, a "significant connection" with Connecticut.

Moreover, even if we were to conclude that both the "significant connection" and the "substantial evidence" requirements of the "best interest" test were met, it is clear that the UCCJA seeks to assure that only one state make the custody decision. Assuming the defendant had filed a petition in this state, we note that General Statutes § 46b-96(a) expressly provides: "A court of this state shall not exercise its jurisdiction under this chapter if at the time of filing the petition a proceeding concerning the custody of the child is pending in a court of another state exercising jurisdiction substantially in conformity with this chapter . . . ."[11] See N.J. Stat. Ann. § 2A: 34-34 (a).

---

[11] General Statutes § 46b-96 is substantially the same as § 6 of the uniform act. There the commissioners' note indicates the following: "Because of the havoc wreaked by simultaneous and competitive jurisdiction . . . this section [section 6] seeks to avoid jurisdictional conflict with all feasible means, including novel methods. Courts are expected to take an active part under this section in seeking out

In arguing that we should uphold the trial court's judgment, the defendant claims that the New Jersey court did not have jurisdiction because the defendant did not receive adequate notice of the New Jersey proceedings. It is clear that under the UCCJA, before a court can make a decree, "reasonable notice and opportunity to be heard shall be given to the contestants, any parent whose parental rights have not been previously terminated and any person who has physical custody of the child. If any of these persons is outside the state, notice and opportunity to be heard shall be given pursuant to section 46b-95 [See N.J. Stat. Ann. § 2A: 34-33]." General Statutes § 46b-94; see N.J. Stat. Ann. § 2A: 34-32. "Notice required for the exercise of jurisdiction over a person outside this state shall be given in a manner reasonably calculated to give actual notice . . . ." General Statutes § 46b-95(a) ;[12] see N.J.

information about court proceedings concerning the same child pending in other states." 9 U.L.A., Uniform Child Custody Jurisdiction Act § 6, commissioners' note.

[12] General Statutes § 46b-95 provides in full: "(a) Notice required for the exercise of jurisdiction over a person outside this state shall be given in a manner reasonably calculated to give actual notice, and may be: (1) By personal delivery outside this state in the manner prescribed for service of process within this state; (2) in the manner prescribed by the law of the place in which the service is made for service of process in that place in an action in any of its courts of general jurisdiction; (3) any form of mail addressed to the person to be served and requesting a receipt; or (4) as directed by the court including publication, if other means of notification are ineffective.

"(b) Notice under this section shall be served, mailed or delivered or last published at least twelve days before any hearing in this state.

"(c) Proof of service outside this state may be made by affidavit of the individual who made the service, or in the manner prescibed by the law of this state, the order pursuant to which the service is made, or the law of the place in which the service is made. If service is made by mail, proof may be a receipt signed by the addressee or other evidence of delivery to the addressee.

"(d) Notice is not required if a person submits to the jurisdiction of the court."

Stat. Ann. § 2A: 34-33 (a). It is clear that the defendant had "reasonable notice and opportunity to be heard" in the New Jersey proceedings. The defendant testified that on December 9, 1979, she was served, by a sheriff in Connecticut, with the New Jersey court's initial decree and its order to show cause telling her to appear in New Jersey at a hearing on December 14, 1979. As previously discussed, she retained the services of a New Jersey attorney to represent her at the show cause hearing. She also testified that, upon advice of her counsel, she chose not to present herself in New Jersey at the show cause hearing.[13] Her New Jersey attorney appeared at the hearing, questioned the jurisdiction of the New Jersey court, and communicated with the defendant after the hearing.[14]

The defendant also claims that the "reprehensible conduct" of the plaintiff, in taking the child from the home of the defendant and allegedly "concealing" her from the defendant, supports the trial court's conclusion that the New Jersey decree should not be recognized. In making this argument, the defendant apparently relies on General Statutes § 46b-98(a). See N.J. Stat. Ann. § 2A: 34-36 (a). That section states: "If the petitioner for an initial

[13] There is no indication, and no claim by the defendant, that any evidence bearing on the determination to be made by the New Jersey court at the show cause hearing was offered on behalf of the defendant.

[14] The Connecticut trial court, in refusing to find the defendant in contempt, did find that the defendant did not have adequate notice of the New Jersey order. It is clear that the finding relates solely to the conclusion that the court was of the opinion that the defendant did not have adequate notice of the custody order issued by the New Jersey court after the December 14 hearing. This finding does not affect the jurisdiction of the New Jersey court to render its order, but rather relates to the court's refusal to find the defendant in contempt for failure to obey that order. It is clear that the defendant now has notice of the order.

decree has wrongfully taken the child from another state or has engaged in similar reprehensible conduct, the court may decline to exercise jurisdiction if it is just and proper under the circumstances."

We initially note that this provision does not set forth any new bases for jurisdiction. Secondly, under this section, the determination of whether the plaintiff's conduct was reprehensible was more properly a question for the New Jersey court. Thirdly, we point out that the act does not *require* a state to decline to exercise its jurisdiction over the matter for such conduct. We defer to the judgment of the New Jersey court in exercising its jurisdiction.[15]

It is clear, then, that the trial court erred in concluding that the New Jersey court did not have jurisdiction to determine the custody of the child. Since the New Jersey court "had assumed jurisdiction under statutory provisions substantially in accordance" with our act, the New Jersey court decree is entitled to recognition and enforcement by the courts of this state. General Statutes § 46b-103.

Once a certified copy of a custody decree of another state has been filed in the office of the clerk of the Superior Court, "[t]he clerk shall treat the decree in the same manner as a custody decree of the superior court. A custody decree so filed has the same effect and shall be enforced in like manner as a custody decree rendered by the superior court." General Statutes § 46b-105(a). The record indicates

---

[15] We do not know whether, and to what extent, the New Jersey court, at the December 14, 1979 hearing, had evidence of the conduct of the plaintiff before it issued its order. We do note, however, that the defendant retained an attorney for that hearing, who appeared at the hearing and contested the New Jersey court's jurisdiction.

that the plaintiff has filed a certified copy of the New Jersey decree in the office of the Superior Court at Danbury. Accordingly, the decree is entitled to be enforced as if it were a decree rendered by a court of this state.

There is error, the judgment is set aside, and the case is remanded with direction that the New Jersey decree be given full recognition and enforcement under the UCCJA.

In this opinion the other judges concurred.