[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties in this action were married on July 4, 1987 and resided in the State of North Carolina until May 11, 1990, when the defendant moved to the State of Connecticut. A child, Harvey Dean Harold II, was born on March 25, 1988, issue of the marriage and resided in the State of North Carolina from the time of his birth until May 11, 1990, when he was taken to Connecticut by the defendant mother, where they have resided ever since.
On May 29, 1990, the defendant, pursuant to General Statutes section 46b-15 et seq., obtained an ex parte restraining order in this court, which included temporary CT Page 2987 custody of the minor child.
On June 8, 1990, the defendant father instituted an action in the District Court, County of Catawba, State of North Carolina, seeking temporary and permanent custody of the minor child.
Although in the proceedings in North Carolina the plaintiff sought a "temporary or ex parte" order of custody, such order was not prosecuted or obtained.
Personal service of the North Carolina custody proceeding was made upon the defendant in Connecticut and she had notice and an opportunity to be heard thereon. Thereafter, the Connecticut restraining and temporary custody orders were extended for an additional 90 days, but eventually lapsed sometime in December, 1990, and became of no further force or effect. Although the plaintiff had notice of the Connecticut restraining order/custody proceedings, he never appeared therein.
In the meantime the plaintiff obtained a decree of custody by default of appearance in the North Carolina court on November 14, 1990, and registered a certified copy of said decree in this court on February 28, 1991. The plaintiff then on March 4, 1991 filed a motion for contempt to enforce the North Carolina decree and an order that the child be turned over to him. The defendant appeared by counsel and on March 21, 1991 filed motions in this court, requesting this Court to modify the North Carolina decree, appoint an attorney for the minor child and refer the matter to family relations.
I. North Carolina Decree
The starting point of this court's analysis is the effect to be given to the North Carolina decree which granted custody to the plaintiff father. North Carolina enacted the Uniform Child Custody Jurisdiction Act (UCCJA). See North Carolina General Statutes sections 50A-1 to 50A-25, as has Connecticut, see General Statutes sections 46b-90 et seq.
General Statutes section 46b-103 provides that "The courts of this state shall recognize and enforce an initial or modification decree of a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with this chapter or which was made under factual circumstances meeting the jurisdictional standards of this chapter, so long as this decree has not been modified in accordance with jurisdictional standards similar to those of this chapter." It is clear that before a court can enter a CT Page 2988 custody decree under the UCCJA, ". . .reasonable notice and opportunity to be heard shall be given to the contestants, any parent whose parental rights have not been previously terminated and any person who has physical custody of the child. If any of these persons is outside this state, notice and opportunity to be heard shall be given pursuant to Section 46b-95." General Statutes section 46b-94.
"Notice required for the exercise of jurisdiction over a person outside this state shall be given in a manner reasonably calculated to give actual notice. . ." General Statutes section 46b-95(a).[1] It is clear that the defendant had "reasonable notice and an opportunity to be heard" in the North Carolina proceedings. The Connecticut sheriff's return under oath declared that in-hand service was made on the defendant on July 13, 1990, which the defendant admitted in her testimony. Also, notice of the November 14, 1990 final hearing was directed to the defendant's address in Connecticut by certified mail, which she did not pick up at the post office. The defendant also testified that she retained a Connecticut attorney, discussed the North Carolina proceedings with him, and after this discussion did not defend against them.
It is also clear that North Carolina was the "home state" at the commencement of the proceedings before it, and its custody decree must be therefore considered the "initial decree". General Statutes sections 46b-92 (5) and (6).[2]
I reach this conclusion because although the Connecticut restraining and temporary custody orders may have qualified as "initial decrees" under the UCCJA at one time, they are now no longer in full force and effect, having expired.
Since the North Carolina court "had assumed jurisdiction under statutory provisions substantially in accordance" with our act, the North Carolina court decree is entitled to "recognition and enforcement by the courts of this state." General Statutes section 46b-103.
As the Court finds that the requirements of General Statutes section 46b-105 (a)[3] have been met, the decree must be treated in the same manner as a custody decree of the Superior Court and is entitled to be enforced in the same manner.
II. The Issue of Jurisdiction
A. CT Page 2989
The defendant argues that notwithstanding the recognition required to be given to the decree of the North Carolina court, this court should assume jurisdiction over her modification proceedings, asserting that this court had jurisdiction over the initial proceedings for the ex parte restraining and temporary custody orders and that the North Carolina court's decree was in violation of its own statutes, the UCCJA and its failure to communicate with the Connecticut courts. The plaintiff argues, on the other hand, that once this court grants recognition to the North Carolina court decree, it must enforce it and cannot exercise jurisdiction to hear the modification proceeding. The plaintiff claims that this position is justified by the holding of Agnello v. Becker,184 Conn. 421 (1981) or the plain meaning of General Statutes section 46b-104 (a).[4]
This court is not persuaded by either party's arguments.
During the hearing on the parties' motions, the court was advised that the defendant had instituted a proceeding in the North Carolina court to modify its initial decree. At the conclusion of the hearing, the court continued the case, entered interim orders and requested counsel to file briefs. The court then communicated with the North Carolina court pursuant to General Statutes section 46b-96 (c),[5] and was informed by that court that the defendant's modification motion was filed March 25, 1991, after her motion for modification filed here. (Emphasis supplied.) Accordingly, since the North Carolina modification proceeding was not pending at the time the Connecticut motion to modify custody was filed, this court is not barred from exercising jurisdiction by General Statutes section 46b-96 (a).[6]
See Glassman v. Maccione, 17 Conn. App. 419, 421 (1989).
The Court finds that the minor child resided in Connecticut continuously from May 11, 1990 to March 21, 1991, the date the defendant's modification motion was filed in this court. General Statutes section 46b-93 (a) provides in pertinent part that: "The superior court shall have jurisdiction to make a child custody determination by initial or modification decree if (1) This state (A) is the home state of the child at the time of the commencement of the proceeding. . . ." (emphasis supplied) As the child resided in Connecticut with the defendant for more than six consecutive months before March 21, 1991, the commencement of the modification proceeding, Connecticut is the home state and clearly has jurisdiction over the dispute under General Statutes section 46b-93 (a)1(A). See section 46b-92 (5). note 2. was filed, this court is not barred from exercising jurisdiction by General Statutes section 46b-96 (a).[6] See CT Page 2990 Glassman v. Maccione, 17 Conn. App. 419, 421 (1989).
The Court finds that the minor child resided in Connecticut continuously from May 11, 1990 to March 21, 1991, the date the defendant's modification motion was filed in this court. General Statutes section 46b-93 (a) provides in pertinent part that: "The superior court shall have jurisdiction to make a child custody determination by initial or modification decree if (1) This state (A) is the home state of the child at the time of the commencement of the proceeding. . . ." (emphasis supplied) As the child resided in Connecticut with the defendant for more than six consecutive months before March 21, 1991, the commencement of the modification proceeding, Connecticut is the home state and clearly has jurisdiction over the dispute under General Statutes section 46b-93 (a)1(A). See section 46b-92 (5), note 2, supra. See also Kioukis v. Kioukis, 185 Conn. 249, 257 (1981).
This satisfies the second prong of General Statutes section 46b-104 (a).
I now turn to the plaintiff's argument that because the North Carolina court (which rendered the initial decree) has jurisdiction over the dispute, the first prong of section 46b-104 (a) prohibits this Court from assuming jurisdiction.
Modification jurisdiction under the UCCJA is determined by sections 46b-93 and 46b-104. As previously stated, section 46b-104a prescribes the prerequisites before the court is able to modify an out-of-state decree. It expresses a preference that jurisdiction to modify an existing decree is reserved for the state that rendered the initial decree.
The Kioukis court, supra, at pages 254-255 in construing section 46b-104, said:
 "As stated in the commissioners' note to section 14 of the UCCJA (here, General Statutes section 46b-104): In order to achieve greater stability of custody arrangements and avoid forum shopping, subsection (a) declares that other states will defer to the continuing jurisdiction of the court of another state as long as that state has jurisdiction under the standards of this Act. In other words, all petitions for modification are to be addressed to the prior state if that state has sufficient contact with the case to CT Page 2991 satisfy section 3 (here, General Statutes section 46b-93). The fact that the court had previously considered the case may be one factor favoring its continued jurisdiction. If, however, all the persons involved have moved away or the contact with the state has otherwise become slight, modification jurisdiction would shift elsewhere. . . ."
The Kioukis court, supra, at page 255 goes on to recite some examples which are comparable, but distinguishable from the facts here, and are illustrative of the factors to be considered. The plaintiff argues that the defendant "abducted" or "absconded" with the child. This is simply not so, as no custody order, ex parte, temporary, or otherwise divested the defendant from her common law right of joint custody. Moreover, the defendant promptly moved to obtain an ex parte custody order in Connecticut, attempting to legitimize her stay here with the child. Although this court does not commend or condone the actions of the parties in failing to confront the proceedings commenced by the other in an orderly fashion and alerting the North Carolina and Connecticut courts to communicate with each other, this court must deal with the facts as they are.
This case is distinguished from the holding in Agnello v. Becker, 184 Conn. 421 (1981), relied on by the plaintiff, because the plaintiff delayed in obtaining a custody order for five months and waited for over three months longer to enforce that decree, while in Agnello, supra, the party seeking to enforce the out-of-state decree acted promptly. During this delay the child developed residence in Connecticut, making it the home state for the purpose of the modification proceeding. The defendant contends that the child has extended family here, including a grandfather and grandmother, two uncles and two aunts, and is enrolled in the "Head Start" program to begin soon, and claims that the child is healthy, happy and is well cared for.
The plaintiff is employed, made a home for the child from his birth to the time of the parties' separation and claims that in his present home with plaintiff's grandmother the child will be well cared for.
The court also had the benefit of seeing and hearing the parties testify as to each other's alleged derelictions, and is also mindful of the plaintiff's apparent resistance to the court's offer to grant visitation to him on the evening of the hearing after plaintiff's claim that he had not seen the CT Page 2992 child for almost one year. Nor was there any attempt by the plaintiff father to arrange visitation with the child prior to the date of hearing.
The court also takes notice that our superior court has a well organized, experienced domestic relations division which is able to investigate a custody dispute to assist the court in the determination of the child's best interests. The North Carolina court does not have the benefit of equivalent assistance, and according to the North Carolina court, its home studies "provide very little independent information that is of value." See letter from Honorable L. Oliver Noble, District Judge, to this court, April 4, 1991.
The North Carolina court's jurisdiction, therefore, does not continue indefinitely. At this point the child's connections with North Carolina have become minimal and too tenuous to meet the requirements of General Statutes section 46b-93 in the light of Connecticut's more temporal relationship to the child.
The court's conclusion is buttressed by the purpose of the UCCJA, which is to limit jurisdiction, rather than proliferate it. In discussing General Statutes section 46b-93 (a)(2), the Kioukis court said, ". . .: jurisdiction exists only if it is in the child's interest, not merely the interest or convenience of the feuding parties, to determine custody in a particular state. The interest of the child is served when the forum has optimum access to relevant evidence about the child and his family. There must be maximum rather than minimum contact with the state." Id. 258. This is now so in Connecticut and not so in North Carolina.
Having determined that this court has jurisdiction, I have considered and weighed the factors set forth in General Statutes section 46b-97 (c)[7] and finds that it is not an inconvenient forum.
III. Relief to be Afforded
Considering all of the factors above stated, and the necessity to provide some measure of stability for the child and not uprooting him, and balancing this with his need to see and renew his relationship with his father, the Court in the exercise of its equitable powers enters orders as follows:
 1. The proceedings on the plaintiff's motion for contempt are stayed until the custody modification proceeding is determined. Until then neither party shall remove the child from this state except in compliance with this order.
CT Page 2993
 2. The custody of said child is referred to Family Relations for a full investigation; the parties are ordered to cooperate with Family Relations and to make the child available for interviews.
 3. Attorney Barbara Quinn of Andrews, Quinn and Cosgrove, is appointed attorney for said minor child. Each party shall pay one-half of her attorneys' fees and expenses.
 4. The child shall continue to reside with the defendant mother; however, the plaintiff father shall have the following temporary rights of access to the child, in North Carolina, to be in plaintiff's grandmother's home: the last week of every other month, commencing May 24, 1991; the parties shall each pay one half of the child's round trip travel expenses. The plaintiff shall pay his own travel expenses. The defendant shall bring said child to North Carolina and pay her own travel expenses. The plaintiff shall return said child to Connecticut.
 5. The parties shall comply with the relevant provisions of the UCCJA, specifically including General Statutes sections 46b-99; 46b-101; 46b-108; 46b-109 and 46b-110, and the like provisions of the North Carolina statutes.
 6. A certified copy of this memorandum of decision shall be communicated to the North Carolina court.
TELLER, J.