[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO DISMISS AND MOTION FOR COUNSEL FEES.
FACTS
On February 15, 1995, the plaintiffs, Theresa Luther and Reinhard Luther, filed a petition for temporary custody of their minor grandchildren, Rachael and Brendt Wargo. The paternal grandparents of the children, John Wargo and Marie Wargo, filed a cross petition for temporary custody and a motion to dismiss the petition of the Luthers. On April 12, 1995, the Probate Court at Plymouth, Connecticut, Sonja de Sopusa, J., issued a written ruling denying the defendant's motion to dismiss. Subsequent to the Probate Court's April 12, 1995 ruling, the defendants did not move for an appeal within the time allotted by General Statutes §45a-188, which is thirty days from the rendering of a probate court decision.[1] Also subsequent to the Probate Court's denial of the motion to dismiss, the case was transferred from the Probate Court CT Page 11511 to the Superior Court for Juvenile Matters in Torrington upon motion by counsel for the minor children. On its own motion on July 7, 1995, and by agreement of all the parties, the juvenile court transferred the matter to the Family Division of the superior court pursuant to § 51-347(b)a. In addition to these proceedings, on May 29, 1995, the defendants filed a petition for temporary custody of the minor children in the State of Florida.
On September 8, 1995, the defendant again filed a motion to dismiss the action with a supporting memorandum of law on the grounds that this court lacks subject matter jurisdiction because the Probate Court did not have jurisdiction and the only way for this court to obtain jurisdiction would be under the Uniform Child Custody Jurisdiction Act (UCCJA). The plaintiffs, the guardian ad litem and the attorney for the minor children have filed timely briefs in opposition to the motion to dismiss.
On July 24, 1995, counsel for the minor children, Dan Shaban, submitted a motion for attorneys fees on behalf of himself and Attorney Benedict, the guardian ad litem for the minor children. Attorney Shaban seeks to have the court determine a reasonable rate for services rendered by him and further seeks to have the court allocate liability for payment of those fees between the parties. Attorney Benedict has submitted an itemization of service as set out in footnote 2.
DISCUSSION
"The motion to dismiss shall be used to assert . . . lack of jurisdiction over the subject matter . . . . Practice Book § 143. "`Subject matter jurisdiction is the power of the court to hear and determine cases of the general class to which the proceedings in question belong.'" Ambroise v. William Raveis Real Estate, Inc.,226 Conn. 757, 764-65, 682 A.2d 1303 (1993), quoting LeConche v.Ellingers, 215 Conn. 701, 709, 579 A.2d 1 (1990). "[J]urisdiction of the subject matter is a question of law and cannot be waived or conferred by consent. . . ." (Citations omitted.) In re JudicialInquiry No. 85-01, 221 Conn. 625, 629, 605 A.2d 545 (1992). "Moreover, whenever a court discovers it has no jurisdiction, it is bound to dismiss the case, without regard to previous rulings." Id., 629.
"`A court has subject matter jurisdiction if it has the authority to adjudicate a particular type of legal controversy. Such jurisdiction relates to the court's competency to exercise CT Page 11512 power, and not to the regularity of the court's exercise of that power. Monroe v. Monroe, [177 Conn. 173, 413 A.2d 819, appeal dismissed, 444 U.S. 801, 100 S.Ct. 20, 62 L.Ed.2d 14 (1979)] . . .'State v. Malkowski, 189 Conn. 101, 105-106, 454 A.2d 275
(1983). Castro v. Viera, 207 Conn. 420, 427, 541 A.2d 1216 (1988)."Plasil v. Tableman, 223 Conn. 68, 80, 612 A.2d 763 (1992).
Pursuant to General Statutes § 51-164s "the Superior Court is authorized to hear all cases except those over which the probate courts have original jurisdiction." (Citation omitted.)Lampansona v. Jacobs, 209 Conn. 724, 728, 553 A.2d 175 (1989). The crux of the defendants' argument is that the probate court did not have subject matter jurisdiction over the action and thus, the superior court also lacks subject matter jurisdiction. The right to appeal from a decision of the probate court is purely statutory and the rights fixed by statute for taking and prosecuting the appeal must be met. State v. Goggin, 208 Conn. 606, 615, ___ A.2d ___ (19__); Exchange Buffet Corporation v. Rogers, 139 Conn. 374,376, ___ A.2d ___ (19__); Bergin v. Bergin, supra, 3 Conn. App. 566,568. "An appeal under section 45a-186 by those of the age of majority and who are present or who have legal notice to be present, shall be taken with thirty days. If such persons have no notice to be present and are not present, then appeal shall be taken within twelve months, except for appeals by such persons from a decree of termination of parental rights or adoption, in which case appeal shall be taken within ninety days." General Statutes § 45a-187.
General Statutes 45a-186 provides in relevant part that "[a]ny person aggrieved by any order, denial or decree of a court of probate in any matter, unless otherwise specially provided by law, may appeal therefrom to the superior court for the judicial district in which such court of probate is held." "In an appeal from probate, the trial court exercises the right to make an independent and de novo determination of the issue involved, without regard to the result reached by the Probate Court." (Citations omitted.) Bristol v. Brundage, 24 Conn. App. 402
(1991).
The time for filing an appeal is from the date the decree is entered. Willard v. McKone, 155 Conn. 413, ___ A.2d ___ (1967). In Frank v. Frank, Superior Court, judicial district of Middletown, Docket No. 66226 (8 Conn. L. Rptr. 118, 120, December 22, 1992, Walsh, J.), the court held that the time for filing an appeal begins to run from the date the parties are notified that the CT Page 11513 probate court will not proceed further on a motion for reconsideration. In the present case, the ruling of the probate court was issued on April 12, 1995 and no motion for reconsideration was filed. Therefore, the time for filing an appeal in accordance with General Statutes § 45a-188, ran from the April 12, 1995 ruling of the probate court. The defendants conceded at oral argument that an appeal was never filed, nor for that matter did the defendants seek to bring an appeal on the unfounded assumption by counsel that an appeal would be moot because the case was transferred from the probate court to the juvenile court. It is concluded that any question of the ruling of the probate court on the matter of jurisdiction should have been raised by way of appeal which was not done, nor even attempted in this case.
In addition, General Statutes § 46b-1 confers jurisdiction of this case on the superior court. "Matters within the jurisdiction of the superior court deemed to be family relations matters shall be matters affecting or involving . . . proceedings to determine the custody and visitation of children." General Statutes § 46b-1
(6). Also, General Statutes 46b-1(17) states in pertinent part: Matters within the jurisdiction of the superior court deemed to be family relations matters shall be matters affecting or involving . . . (17) all such other matters within the jurisdiction of the superior court concerning children or family relations as may be determined by the judges of said court." Pursuant to the authority of 46b-1, this court has jurisdiction over this matter.
The defendants' argument that the court lacks subject matter jurisdiction because another action is pending in the Florida courts is without merit. Under the UCCJA § 46b-93 "(a) the superior court shall have jurisdiction to make a child custody determination by initial or modification decree if . . . (2) it is in the best interest of the child that a court of this state assume jurisdiction because (A) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (B) there is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationships. . . ."
The defendants argue that another action was pending in Florida and therefore, the Connecticut court can not exercise jurisdiction. In the first place, as discussed above, the UCCJA is not the only statutory section under which the superior court obtains jurisdiction over family matters. Additionally, and more CT Page 11514 importantly, the Florida action relied upon by the defendants as the "pending action" was brought after the petition of the plaintiffs. In addition, the Florida court has agreed to stay the Wargos' petition for custody pending the outcome of the Connecticut petition. This is in keeping with the intent of the UCCJA which is to "avoid jurisdictional conflict between the courts of different states in matters of child custody." Angello v. Becker, 184 Conn. 421,426, 440 A.2d 172 (1981).
The court finds that it has subject matter jurisdiction over the present matter for the reasons discussed above and the defendants' motion to dismiss is therefore denied.
II. ATTORNEY'S FEES
The Plymouth Probate court appointed Dan Shaban, as counsel for the minor children on or about February 17, 1995 and Attorney Judith Benedict as guardian ad litem on or about April 6, 1995. Counsel for the minor children, on behalf of himself and the guardian ad litem, has moved for counsel fees by motion dated July 24, 1995. The guardian ad litem filed a brief concerning the motion for fees on September 19, 1995 wherein it is suggested that the reasonable fees for services of both the guardian ad litem and counsel for the minor children is requested at the statutory rate up until July 7, 1995 at which time the rate sought to be charged is $120 per hour. The motion of Attorney Shaban seeks to have this court determine the reasonable amount to be charged as fees and to determine the liability for payment as between the parties. The defendant filed an objection to the motion for counsel fees and a memorandum of law in support of the objection. Attorney Shaban filed a reply memorandum to the defendants' objection.
"In any proceeding seeking relief under the provisions of this chapter and . . . 46b-1 . . . . the court appoints an attorney for a minor child, the court may order the father, mother or an intervening party, individually or in any combination, to pay the reasonable fees of the attorney or may order the payment of the attorney's fees in whole or in part from the estate of the child. If the child is receiving or has received state aid or care, the reasonable compensation of the attorney shall be established by, and paid from funds appropriated to, the judicial department." General Statutes § 46b-62. The appointment of a guardian ad litem for minors is governed by General Statutes § 45a-132 and Practice Book § 484. General Statutes § 45a-132 provides in pertinent part: "In any proceeding before a court of probate or superior court CT Page 11515 including the family support magistrate division, whether acting upon an appeal from probate or otherwise, the judge or magistrate may appoint a guardian ad litem for any minor . . . ." General Statutes § 45a-132.
In this case, the guardian ad litem and counsel for the minor children were appointed by the Probate Court. Under the Rules of Superior Court, specifically Rule 1047.1(c) "[a]ny appearance filed for any party in the court of probate shall continue in the superior court. . . ".
The defendant argues that 46b-62 does not provide a basis for an award for attorneys fees as the action is not brought pursuant to any of the statutes referenced therein. First, the present action is brought pursuant to 46b-1 which is specifically enumerated in General Statutes § 46b-62. In addition, the reach of General Statutes is broad § 46b-62 as it specifically states that "[i]n any proceeding seeking relief under the provisions of thischapter" counsel fees for the attorney for a minor child may be sought and awarded. (Emphasis added.)
The defendants next argue that Practice Book § 484 does not provide the basis for the award of counsel fees for a guardian ad litem where the guardian was not appointed by the Superior Court. As argued by the plaintiff, Superior Court Rule 1047.1(c) states in pertinent part that "[a]ny appearance filed for any party in the court of probate shall continue in the superior court. . . ". To suggest that the court needs to reappoint a guardian in order to allow for the payment of fees is simply without merit.
"In any family relations matter involving an abused or neglected child, a guardian ad litem shall be appointed. The court may also appoint a guardian ad litem for a minor involved in any other judicial proceeding. Unless the court orders that another person be appointed guardian ad litem, a family relations counselor or family relations caseworker shall be designated as guardian ad litem. If the guardian ad litem is not a family relations counselor or family relations caseworker, the court may order compensation for services rendered." Practice Book § 484. The plain language of this rule does not, as the defendant argues, necessitate the appointment of a family relations counselor as guardian ad litem. It is left to the discretion of the court to appoint someone other than a family relations officer and that discretion was exercised in this case. In addition, the language clearly permits compensation for a guardian ad litem who is not a CT Page 11516 family relations caseworker or counselor. In this case, the guardian ad litem appointed was not a family relations caseworker or counselor and therefore, in accordance with Practice Book § 484 is entitled to compensation.
The defendants next argue that dismissal of the present case would not trigger an award of compensation for the guardian ad litem or counsel for the minor child. As the court has denied the motion to dismiss, and the defendants' arguments are not persuasive, the court will not rule on this aspect of the defendants' objection beyond overruling the objection in total. It is noted, however, that even if dismissed, both Attorney Shaban and Attorney Benedict were appointed by the Probate Court and almost all work done to date was by virtue of that appointment and in opposition to the numerous motions filed by the defendant. As such, even assuming dismissal, the court would have ordered payment of counsel fees up to and including the time of dismissal.
The motion for counsel fees on the part of counsel for the children is granted. The court, however, orders that an itemization be filed by both Attorney Shaban and Attorney Benedict[2] and to the extent that the court finds the request reasonable shall order it to be paid. The court also orders that both parties share in the responsibility for paying for both Attorney Shaban and Attorney Benedict's fees. Specifically, the Luthers are ordered to pay 50 percent of both fees and the Wargos are ordered to pay 50 percent of both counsels' fees.
III. VISITATION
The court conducted a status conference with the parties on September 21, 1995, following an indication from a filing by the defendants that yet another proceeding had been commenced in Florida by the defendants. Simultaneously, Judge Benson called this court in Connecticut to indicate that he had discovered the same and that he intended to dismiss that proceeding, and decline jurisdiction in favor of Connecticut.
The parties conducted an on the record discussion concerning the grandparents' use of the Florida therapist to assist the children and grandparents in the formation of a visitation schedule pending further proceedings in Connecticut. The transcript discloses that the defendants, represented by counsel, were ambivalent about the recommendations of Dr. Day for the children to come to Connecticut. CT Page 11517
The court, on October 2, 1995, entertained the testimony of Mr. Wargo, who had traveled from Florida to Connecticut to articulate his concerns surrounding the proposed trip to Connecticut during an October break from school of the older child. The court heard that testimony, as well as testimony of the guardian ad litem, and the maternal grandmother. Clearly, the respective grandparents have endured an unspeakable tragedy, and are finding it almost impossible to deal with each other at this time. They each have an allegiance to their children; the Luther's to their deceased daughter, and the Wargo's to their incarcerated son. The children, predictably and sadly, are not only in the middle of this conflict, but are forced to face a grim reality in their lives — their mother's death, and the accusation against their father.
The children have a right to develop and retain a close and loving relationship with their entire extended family. While the court understands the concerns expressed by Mr. Wargo, he cannot protect them from the reality of their father's present incarceration, and he cannot prevent them from being exposed to what he considers are disruptive possible events in Connecticut. The Wargo's must further understand that their reality will include the children's being visited by other family members, as well as authorities investigating both the criminal case and the family case, and that the transitions for the children may be disruptive to their adult lives. They have been a resource for the children, and they must understand that under the facts of this case, the dramatic change in family structure for these children requires them to be patient with the children and their necessary transitions. They cannot take the position that they are in control of these children's lives.
The maternal grandmother impressed the court as a caring and careful person, who did not exhibit a lack of understanding of Mr. Wargo's concerns. While their is opposition between them, she confirmed that she would honor the conditions imposed upon her and her family as the children visit. She agreed to allow the children to stay in contact with the Wargo's while they were here, and to allow them to return to Florida if they so requested. The maternal grandparents had a close and consistent relationship with these children during the time their mother was alive. The lives of the children have a history of involvement with their maternal relatives. They have a right to continue that relationship. CT Page 11518
The court orders that visitation take place in the State of Connecticut pursuant to a revised recommendation of Dr. Day. The Luthers shall pick the children up at the paternal grandparents' home in Florida on October 8, 1995 at 9 a.m. for the flight to Connecticut. The Luthers shall provide a travel itinerary to the Wargos. The children shall fly to Connecticut with the maternal grandparents, and be returned on October 23, 1995. The Wargo's shall pick the children up at the Orlando airport at 9:35 a.m. or thereafter, when the plane arrives.
The children shall communicate with their paternal grandparents by telephone no less than three times weekly during the visit, and shall be allowed to call when they ask to do so. They are to be permitted to go back to Florida at any time during the visit that they request.
The children shall be made available to their attorney and the guardian ad litem while they are present in Connecticut. The Luther's are ordered to decline interviews by any other persons during this visit, absent court order for good cause shown. In all other respects, the parties will comply with Dr. Day's recommendations fully.
Orders shall enter consistent with this memorandum. The court will send a certified copy to Judge Benson by overnight mail for filing in Florida.
DRANGINIS, J.