[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO DISMISS NO. 116.00 DATED JANUARY 21, 1992
On January 6, 1992 a modification citation was prepared by the defendant Neal Kaye hereinafter called the father for an order modifying primary physical custody of the minor child Jared so that it be changed from the mother to the father. Hereinafter Neal Kaye is called the father and Jared is called the son. Beth Kaye at the time of those papers was the primary physical custodian. Beth Kaye will hereinafter be called the mother (she has remarried and her married name is Beth Shapiro). The modification citation was signed by an assistant clerk of this court on January 7, 1992 setting this down for a hearing on the motion on January 30, 1992 at 10:00 A.M. The original motion shows that the sheriff commenced service by sending certified letter, return receipt, with all of the court's orders on January 16, 1992. There is no dispute that the mother received timely notice of these proceedings.
On January 21, 1992 by motion of that date and filed January 29, 1992 a motion to dismiss was filed by the mother claiming:
1. The court lacks jurisdiction over the subject matter pursuant to Conn. Gen. Stats. 46b-93.
2. Connecticut is an improper venue and/or inconvenient forum pursuant to Conn. Gen. Stats. 46b-97.
3. Although not raised in the motion to dismiss it was raised in the brief dated January 27, 1992 as paragraph 3 that the Parental Kidnapping Prevention Act which is federal law has CT Page 3375 supremacy over the Connecticut Uniform Child Custody Jurisdiction Act. (Hereinafter called the UCCJA.)
The court listened to the mother and father testify along with Jean Cahalan who is the significant other in the father's life. The court has further reviewed the motion to dismiss and the plaintiff's brief in support of motion to dismiss and affidavit. The court has reviewed the plaintiff's reply memorandum. The court has reviewed the defendant's memorandum of law in opposition to the motion to dismiss and the defendant's memorandum of law in support of appointment of counsel for the minor child. The decision rendered hereunder will be the basis for the rulings on the other motions that were taken by the court and those rulings will be noted on those additional motions. The court took motions 113.00, 114.00, 115.00 in addition.
The marriage of the mother and father was dissolved on November 23, 1987 and a separation agreement of September 23, 1987 was incorporated into the judgment. Article 2.1 of that separation agreement provides the following:
 "The husband and the wife shall have joint custody of the minor child, issue of the marriage, with primary residence of the child to be with the wife."
Thereafter there was an amended visitation schedule dated September 7, 1991 and it was agreed to by both the mother and the father modifying the original order and separation agreement. See motion 111.00.
It is undisputed that the wife moved to Philadelphia. Pennsylvania with her husband on June 27, 1991. It is also undisputed that Jared, the son, stayed with his father in Connecticut when his mother moved to Philadelphia and attended tennis camp in Wilton. It is clear that Jared was with his father until July 7, 1991 when the mother picked him up and took him to Pennsylvania. During the summer of 1991, Jared exchanged visits between his Parents. Jared started school in Pennsylvania with an orientation on August 30th and classes began on September 3rd.
The court first addresses the issue of lack of jurisdiction over the subject matter under 46b-93.
Section 46b-93 (a) Provides for a basis on which a Connecticut court has jurisdiction to make a child custody determination by initial or modification decree. In dispute in this case are 1 and 2. Section 1 and 2 provide: CT Page 3376
 1. "This State (A) is the home State of the child at the time of commencement of the proceedings or (B) had been the child's home State within six months before the commencement of the proceedings and the child is absent from this State because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as a parent continues to live in this State. OR
 2. It is in the best interest of the child that a court of this State assumes jurisdiction because (A.) the child and his parents or the child and at least one contestant have a significant connection with this State and (B.) there is available in this State substantial evidence concerning the child's present or future care, protection, training and personal relationships."
These are the two operative provisions. The first section is basically the Home State jurisdiction. Jared Kaye was born in Connecticut and resided here for twelve and a half years. The dispute arises between the parties over the six months provision:
It is clear that if Jared moved on June 27, 1991, it is outside of the six months. It is clear that if the six months begins to run from the time Jared began school or orientation on or about August 30th, then it is within the six month period. What is clear is that Jared was with his father in Connecticut in camp until July 7th. The parties alternated blocks of time thereafter between Connecticut and Pennsylvania. Because the parties have joint custody (this is not custody with mother and father as a visitor) Jared is a resident of Connecticut when he is living with his father. The court finds that it is a close call as to whether or not jurisdiction is obtained under Section 1 of 46b-93, subsection 1B, but it appears that Connecticut was the home state within six months before the commencement of the proceedings and that the child was out of state and that his father continued to live in this state. Accordingly, the court finds that there is jurisdiction under the Home State Doctrine.
What is more abundantly clear to the court, however, is jurisdiction under the "significant connections" test. Section 46b-93 (a)(2) talks about the child and at least one contestant CT Page 3377 have significant connections with this State. Certainly the father has significant connections with this State and this child has significant connections with this State. Also, the requirement is that there be available in this State substantial evidence concerning the child's present or future care and protection, training and/or personal relationships. The son has more significant connections with Connecticut than Pennsylvania. He has his father, grandfather and grandmother and many family members living in Connecticut. The large number of significant long-term connections between Jared and his home state are well in excess of the recently acquired connections with Pennsylvania where he lives with his mother, stepfather and stepsister.
The "significant connections" test allows a state with the most evidence of the child's circumstances to assume jurisdiction. One has to remember that the mere fact that Connecticut assumes jurisdiction does not mean that the decision will not be fair. It may very well be that the investigation if done in Connecticut will make a recommendation that he remain in Pennsylvania. What we are addressing at this point is whether or not this matter should stay in Connecticut. Jared still has continuing ties to the State of Connecticut concerning recreational activities in the State and friends he has made. Jared received his black belt in karate in December of 1991 after training with his instructor for approximately five years. He also plays tennis, a sport where he began playing with his father and attended summer camp in Wilton for the past four years. Jared's medical history and dental history is in Connecticut. All of Jared's dental records are still in Connecticut. In fact, Jared's dentist is his grandfather who lives in Connecticut. Jared's dental checkup took place this past month.
Jared has seen counselors in Connecticut, one in 1987 and the other in 1988. His counseling dating back to 1987 signifies a connection with Connecticut. Jared has numerous and long-established friendships with children with whom he grew up with in Connecticut. These include schoolmates as well as friends from religious and karate instruction. Jared was born in Connecticut, lived here for twelve and a half years and received his educational, athletic and religious training here. Most of Jared's relatives live in Connecticut.
This court must emphasize that the parties presently have joint custody. He placed soccer and basketball in Connecticut. His dermatologist is in Connecticut. Plans were made for his bar mitzvah in Connecticut. Jean Cahalan who is Mr. Kaye's significant other has known Jared since he is age three. She has been alone with him and is his friend. She taught him how to dive in the pool. She taught him how to swim underwater with CT Page 3378 his eyes open. She is involved in his life when he comes up to be with his dad. This court finds that after using the "significant connections" test jurisdiction is properly in Connecticut.
Accordingly, the court finds there is jurisdiction both under the Home State jurisdiction requirements and the "significant connections" doctrine of the statute.
The court now turns to the question of improper venue or inconvenient forum under 46b-97. This court based on its finding of jurisdiction denies the request to dismiss under 46b-97. It is clear that 46b-97 contemplates a court having jurisdiction. The attack on this case is a jurisdictional attack raised under a motion to dismiss. This is not reason to dismiss the case, but rather for a court to decline to exercise jurisdiction. A careful reading of the statute indicates that the court may at any time find it to be an inconvenient forum. This court would keep an open mind as the case progressed as to whether or not the provisions of 46b-97 should be invoked. No matter how the investigation is conducted it is clear that some of the investigation would take place in Pennsylvania and some in Connecticut regardless of whether the case were in Connecticut or Pennsylvania. This court finds Connecticut, at this point, not to be an inconvenient forum.
The court next addresses the third argument by the mother which was not addressed in her motion to dismiss but was briefed. The court is asked to decide whether or not the Parental Kidnapping Prevention Act has supremacy over the Connecticut Uniform Child Custody Jurisdiction Act. The Parental Kidnapping Prevention Act is28 U.S. Code annotated, 1738 A (c)(2)(A)(B). A copy of that act has been provided by counsel and is attached to this decision. The supremacy clause of the constitution operates only where there is a conflict between a federal statute and state law. There is no conflict in this case because the federal statute expressly allows for the state which issued the decree to determine jurisdiction in accordance with its own laws when a contestant remains in the state that granted the decree.
Although substantially similar, the Parental Kidnapping Prevention Act (PKPA) and the UCCJA differ in two important respects. The mother relies on the PRPA's home state jurisdiction preference. Mother's reliance on the PKPA, however, is incorrect since it overlooks the other key difference between the two which is the PKPA's continuing jurisdiction provision. Under the terms of the PRPA. Connecticut still has jurisdiction over the child custody determination. The Act provides: CT Page 3379
 "(d) The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant."
It, is clear that the child does not reside in Connecticut, but the father does so it meets the second part of the test. The reference to (c)(1) refers to the language which is "a child custody determination made by a court of a State is consistent with the provisions of this section only if — (1) such court has jurisdiction under the law of such State."
It is clear that Connecticut allows jurisdiction under either the home State or "significant connections" test. When one of the contestants continues to reside in Connecticut the preference is that the State of initial decree, in this case Connecticut, have the necessary jurisdiction for any subsequent modifications. For all of the reasons previously stated, this court found "significant connections" under the UCCJA.
If we were to follow the wife's supremacy argument to its limit, the UCCJA would be of no effect which clearly was not the intent of the PKPA. States have always had the right to determine jurisdiction in child custody matters as such a determination involves the best interest of its citizens. Note, the federal judiciary has no experience in family matters and, therefore, it defers to the states to make the determination.
This court finds the father's interpretation that section d of the PRPA gives a state jurisdiction if it made a custody order which complied with the PKPA's jurisdictional requirements and a contestant remains a resident of the state to be correct. This act by its title gives evidence as to what the act was trying to prevent. What was really intended here was to prevent a third state from becoming an intermeddler, i.e., the father moves to Florida and brings an action because he feels he can get a better result. This is a contest involving two states with substantial interest. The court finds PRPA not to be in conflict with the UCCJA and finds that Connecticut has jurisdiction. For all of the foregoing reasons, the Motion to Dismiss is denied.
Accordingly, motion 113.00 the Motion of Appointment of Counsel for the Minor Child is granted subject to the court's approval of the attorney. The parties are to come to a mutual CT Page 3380 agreement if they can and submit the name to this court for approval. The terms and conditions of that attorney's service are to be spelled out in a letter signed by the parties and the attorney indicating among other things the hourly rate and all other things that would go in a proper retainer agreement. If the parties are unable to agree they are to present to the court their choices and the court will rule further.
The Motion to Refer to Family Relations. 114.00, is granted subject to the Family Relations Office conducting a screening to determine whether or not they will take it for other than a full custody study at this point and they are to report back to this court on what basis they will take it. The Objection to the Motion to Refer to Family Relations for Appointment of Counsel is denied.
KARAZIN, JUDGE
1738A. Full faith and credit given to child custody determinations
(a) The appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsection (f) of this section, any child custody determination made consistently with the provisions of this section by a court of another State.
(b) As used in this section, the term — (1) "child" means a person under the age of eighteen;
 (2) "contestant" means a person, including a parent, who claims a right to custody or visitation of a child;
 (3) "custody determination" means a judgment, decree, or other order of a court providing for the custody or visitation of a child, and includes permanent and temporary orders, and initial orders and modifications;
 (4) "home State" means the State in which, immediately preceding the time involved, the child lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old, the State in which the child lived from birth with any of such persons. Periods of temporary absence of any of such persons are counted as part of the six-month or other period;
 (5) "modification" and "modify" refer to a custody determination which modifies, replaces, supersedes, or otherwise is made subsequent to, a prior custody determination concerning the same child, whether made by the same court or not;
(6) "person acting as a parent" means a person, other than a parent, CT Page 3381 who has physical custody of a child and who has either been awarded custody by a court or claims a right to custody;
 (7) "physical custody" means actual possession and control of a child; and
 (8) "State" means a State of the United States, the District of Columbia. the Commonwealth of Puerto Rico, or a territory or possession of the United States.
(c) A child custody determination made by a court of a State is consistent with the provisions of this section only if —
(1) such court has jurisdiction under the law of such State; and
(2) one of the following conditions is met:
 (A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;
 (B)(i) it appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;
 (C) the child is physically present in such State and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse;
 (D)(i) it appears that no other State would have jurisdiction under subparagraph (A), (B), (C), or (E), or another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction; or
 (E) the court has continuing jurisdiction pursuant to subsection (d) of this section.
(d) The jurisdiction of a court of a State which has made a child custody CT Page 3382 determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant.
(e) Before a child custody determination is made, reasonable notice and opportunity to be heard shall be given to the contestants, any parent whose parental rights have not been previously terminated and any person who has physical custody of a child.
(f) A court of a State may modify a determination of the custody of the same child made by a court of another State, if —
(1) it has jurisdiction to make such a child custody determination; and
 (2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.
(g) A court of a State shall not exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody determination
(Added Dec. 28, 1980, P.L. 96-611, 8(a), 94 Stat. 3569.)