[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a post-judgment motion for modification of custody, filed by the father of the parties' two minor children, Mr. Trothier, and their mother, who has remarried and is now Mrs. Rinaldi, has moved to dismiss the motion, claiming that the court lacks jurisdiction and, if it has jurisdiction, is an inconvenient forum under the Uniform Child Custody Jurisdiction Act to determine custody of the parties' two minor children. See Sec. 46b-97, C.G.S.
The marriage of the parties was dissolved on June 24, 1991. Legal custody of the children was placed in the parties jointly, with the children to reside with their mother. The children are Amanda, who is now eight years old, and Melinda, who is now six years old. At the time of the dissolution everyone was living in Connecticut. Since February 1993, however, when Mrs. Rinaldi remarried, the children have lived in South Carolina with her and their stepfather.
During August of this year the children were visiting with their father in Connecticut. Rather than return them to Mrs. Rinaldi on August 18, as agreed, Mr. Trothier began this proceeding by way of an application for an ex parte temporary injunction, seeking temporary custody and an order prohibiting Mrs. Rinaldi from removing the children to South Carolina. This court appointed counsel for the children and heard evidence and argument on August 30. Mr. Trothier and other members of his family testified as to the neglected condition of the children when they were picked up in South Carolina for visitation and when they arrived in Connecticut. Briefly stated, their testimony was that the children were in a dirty and unkempt condition when their grandparents picked them up at their home in South Carolina for the trip to Connecticut. One was without shoes or her eyeglasses. They had paper bags with a meager supply of clothes for what was to be an extended visit. Upon their arrival in Connecticut, the clothes were found to be dirty CT Page 9927 and urine-stained as well as in need of repair. The girls were also discovered to have a lice infestation, which their mother had not mentioned until they were in Connecticut for several weeks.
While Mrs. Rinaldi was not present, she was represented by counsel, who cross-examined witnesses and made arguments in support of the motion to dismiss which he had filed that day. Counsel for the children also participated actively in the hearing. Having met with her clients beforehand, she reported on their extreme anxiety over the prospect of returning to South Carolina and recommended that the court continue temporary custody in Mr. Trothier and retain jurisdiction to resolve the issue of a custody modification.
Finding that the children were physically present in the state and that it was necessary in an "emergency" to protect them because they had been subjected to mistreatment by Mrs. Rinaldi, Sec. 46b-93(a)(3)(B), C.G.S., this court continued in effect its order of temporary custody, provided for visitation and telephone contact for Mrs. Rinaldi, referred the case to the Family Services Office for a preliminary custody evaluation and ordered a hearing on September 17 to determine if Connecticut is the proper forum to determine the children's custody.
At that hearing the court received in evidence, without objection by Mrs. Rinaldi's counsel, certified copies of her conviction in South Carolina, and that of her husband, for "unlawful neglect of a child". These convictions were based on pleas of guilty and resulted in suspended prison terms of three years for each defendant and 18 months of probation. The indictments specified that the convictions were for neglect of Amanda and Melinda. Over counsel's objection the court also admitted a certified copy of an investigative file maintained on the Rinaldis by the county Department of Social Services in South Carolina and a copy of certain school records for the children. The social service file contained photographs of the Rinaldi home, including the children's bedroom. After hearing argument and reviewing briefs filed by counsel for both parties, the court took under advisement the questions of its continuing jurisdiction to determine the custody modification as well as whether Connecticut is the appropriate forum to resolve that issue.
Any consideration of these issues must begin with the CT Page 9928 Parental Kidnapping Prevention Act and its continuing jurisdiction provision, 28 U.S.C. § 1738A(d). A court which has made an initial custody determination retains jurisdiction over custody issues, according to that provision, as long as one of the contestants continues to reside in the state, as does Mr. Trothier in this case, and the court has jurisdiction under its own laws. Thus, the question becomes, Does Connecticut have jurisdiction under its codification of the Uniform Child Custody Jurisdiction Act, Section 46b-90 et seq., C.G.S.? Since the "emergency" jurisdiction already found to exist will not suffice to support permanent modification orders, see Uniform Child Custody Jurisdiction Act (U.L.A.) sec. 3, n. 68 (1988), and since Connecticut is obviously not the "home state" of the children, jurisdiction would have to exist under subsection (a)(2) of Section 46b-93, if at all. That subsection allows the court to exercise jurisdiction if it is in the best interest of the child because the child and at least one "contestant" have a "significant connection" with the state and there is available in the state "substantial evidence" concerning the child's"present or future care, protection, training and personal relationships". (Emphasis added.)
The court finds that the children have significant connections with Connecticut. Both were born here and lived here for several years before their move to South Carolina. Their father lives in Connecticut, as do maternal and paternal grandparents and great grandparents and several other members of both parents' families. They are hardly strangers to this state.
In determining whether there is "substantial evidence" in Connecticut, the court must be governed by the Supreme Court's decision in Kioukis v. Kioukis, 185 Conn. 249 (1981). That case, after recognizing a "preference for continuing jurisdiction of the original state" which made a custody determination, Id., 256, finds that the best interest of the child is served "when the forum has optimum access to relevant evidence about the child and family. There must be maximum rather than minimum contact with the state." Id., 258. And, as the emphasized words of the statute above indicate, the relevant evidence is as to the "present or future" care, etc. of the children.
Applying the Kioukis test to this case, the court finds that there is present in Connecticut the "substantial evidence" called for by the statute to support jurisdiction here. The household of the children's father and stepmother is located CT Page 9929 here, as are all of their relatives. The children will have been in school here a sufficient amount of time when a hearing is held for information to be available as to their educational needs. No claim has been made by counsel on behalf of Mrs. Rinaldi that the children have been receiving treatment in South Carolina for any particular physical or psychological conditions; therefore, the court can assume that testimony as to their health needs is as readily available here as there.
Obviously, since the children have lived in South Carolina for the past three and a half years, more historical information is available there. Given the facts of this case, however, the court does not consider that evidence particularly necessary or helpful. The conviction of Mrs. Rinaldi for criminal neglect of her children may, by itself, be a material change of circumstances, thereby focusing the court's attention on what is now in the best interest of the children regardless of their past history. Indeed, focusing on the past may be unduly prejudicial to Mrs. Rinaldi. The court's review of the school and social service records from South Carolina, which were admitted not for the truth of their contents but simply as evidence of the type of information available there, adds to its conviction that what is important in determining Mr. Trothier's motion to change custody is evidence relating to the present and future not the past. It is no more inconvenient for Mr. and Mrs. Rinaldi to come to Connecticut and testify as to their current living arrangements and future plans for the children than it would be for Mr. and Mrs. Trothier to travel to South Carolina.
Finally, the children are here in Connecticut. As the Supreme Court recognized in Brown v. Brown, 195 Conn. 98, 112
(1985), "it is of vital importance in most cases that the judge [have] an opportunity to see and hear the contestants and the child[ren]". This court will be able to "see and hear" the children either directly or through the attorney it has appointed to represent them. A South Carolina court would not have that opportunity unless this court returned custody to Mrs. Rinaldi, which it is unwilling to do in light of her plea of guilty to having criminally neglected them in the past.
Having determined that it has jurisdiction to hear this matter, the court must also determine if it is the appropriate forum under the UCCJA. Many of the same considerations apply. Section 46b-97 requires the court to consider where the home state of the children is, whether another state has a CT Page 9930 "closer connection" with the children and their family and whether "substantial evidence regarding the [children's] present and future care, etc." is more readily available in another state. The Supreme Court has held that the "home state factor . . . was never intended to tip the balance of factors toward a new forum". Brown v. Brown, Id., 109. For all of the reasons stated above this court finds that neither of the other factors suggest that it should decline to exercise its jurisdiction. "No matter how the investigation is conducted it is clear that some of the investigation would take place in Pennsylvania and some in Connecticut regardless of whether the case were in Connecticut or Pennsylvania." Kaye v. Kaye,7 CSCR 511, 512 (1992). This fact alone does not persuade the court that South Carolina "appears to be in a better position to determine custody" of these children, the purpose of the inconvenient forum provision, as found by the Supreme Court in Brown,
Id., 109.
None of the other grounds cited in the plaintiff's motion to dismiss requires discussion; accordingly, the motion is denied.
The case is referred to the Family Services Office for a full custody evaluation, with direction to contact Mr. and Mrs. Rinaldi, as well as the appropriate agency(ies) in South Carolina, to obtain information relevant to the evaluation. At such time as the evaluation is completed, copies shall be provided to all parties and the attorney for the children, and the matter shall be placed on the short calendar for a status conference.
BY THE COURT
SHORTALL, J.